G. Mark French, Trustee, *v.* S. T. Buffatt *et al.*

(*Knoxville,* September Term, 1930.)

Opinion filed November 28, 1930.

SELLS, SIMMONDS & BOWMAN and CHASE & McCOY, for complainant, appellant.

ELY, BUHL & ELY and FOWLER & FOWLER, for defendants, appellees.

MR. JUSTICE McKINNEY delivered the opinion of the Court.

The complainant is a judgment creditor of defendants, Croley, Buffatt and Whittaker, the first named residing in Washington County, and the last two residing in Knox

County. Executions were issued to Washington and Knox Counties and returned *nulla bona*. Thereupon the bill in this cause was filed at Johnson City, to reach the equities of defendants in lands located in the two named counties. The master was appointed receiver and directed to take possession of the lands involved. Before the receiver took actual possession certain citizens of Knox County, who had purchased the Knox County lands at foreclosure sales, and before the filing of the amended bill herein, filed injunction suits at Knoxville, restraining the receiver from interfering with their possession of these lands.

The complainant thereupon amended his bill so as to make the complainants in the Knox County suits defendants to his bill, and charged that the foreclosure sales, by which they became purchasers of these lands, were fraudulent. No further effort was made to have the receiver placed in possession of the Knox County property. These new defendants filed pleas in abatement to the jurisdiction of the Johnson City Court, which pleas were sustained by the chancellor and the bill dismissed as to the Knox County lands. Complainant has appealed and assigned errors which question the correctness of the chancellor's decree.

It is conceded that at common law such actions are local and that separate bills would have to be filed in each county; but it is insisted that the rule has been changed by statute, and we are referred to section 2810 of the Code of Tennessee, and chapter 107, Acts of 1877. These statutes, as set forth in Shannon's Code, are as follows:

Section 4515. ''In actions commenced by the attachment of property without personal service of process,

and in cases where the suit is brought to obtain possession of personal property, or to enforce a lien or mortgage, or where it relates to real property, the attachment may be sued out or suit brought in any county where the real property, or any portion of it, lies, or where any part of the personal property may be found.''

Section 6121, subsection 2. ''All bills filed in any court seeking to divest or clear up the title to land, or to enforce the specific execution of contracts relating to realty, or to foreclose a mortgage or deed of trust by a sale of personal property or realty, shall be filed in the county in which the land, or a material part of it, lies, or in which the deed or mortgage is registered.''

These two provisions are substantially the same. One says, ''in any county where the real property, or any portion of it, lies;'' the other, ''in the county in which the land, or a material part of it, lies.'' The legislature had in mind a single tract of land lying partly in two counties. Such was the construction placed upon section 2810 of the Code by this court in *Campbell* v. *Hampton*, 79 Tenn., 440. In that case the court refers to the fact that this section is an extension of the Act of 1847-8, which it quotes as follows:

''That in all actions of ejectment, or trespass for injuries to real estate, where the tract of land lies in two or more counties, the court of the county in which process shall be served on the defendant or defendants, shall have jurisdiction to try the title to the whole tract of land, in the action of ejectment, and award execution accordingly; and in the action of trespass to hear and determine the case, as though the entire tract lay in the county in which the suit was brought.''

With respect to that act the court says:

"This act gave full power to try a cause for the whole tract of land lying in two or more counties, to the court of either county in which process was served on defendant, and to execute the judgment."

The court then refers to the fact that while the Act of 1847-8 was limited to actions of ejectment and trespass for injuries to real estate, section 2810 of the Code extended the act to suits to recover possession of personal property, or enforce a mortgage or lien, or involving real property. Construing section 2810, the court then said:

"The jurisdiction is not limited to the part of the realty or personalty found in the county, but extends to the property about which the suit is brought, or attachment sued out. To so restrict the application of this section, would be to make it but a re-enactment of other familiar statutes and well-established common-law principles. We think it was intended, that where a tract of land, for example, lies in two counties, all of which was subject to the same claim or demand by a party, he might enforce that demand against the whole, by suit begun in one of the counties in which part of the tract lies."

Clearly the Act of 1847-8 was limited to a single tract of land, and while it was enlarged by section 2810 of the Code so as to include other actions, it did not extend the jurisdiction of the court to a tract of land in another county, no portion of which was located in the county where the suit was instituted.

With respect to the Act of 1877, that may have been passed to meet the decision of Chancellor Cooper in *Roper* v. *Roper*, 3 Tenn. Chy., 53, decided in 1875, in which it was held that a bill could be filed under section 4311 of the Code in Davidson County, where a material defendant resided, to have the sale of a tract of land

located in Trousdale County set aside. At the end of the opinion the following appears in parentheses: "See now, Act of 1877, ch. 107."

This act was construed in *Johnson* v. *Evans*, 1 Tenn. Chy. App. Rep., 621, where it was said:

"Now it will be observed that under section 4311, subsection 2, prior to the passage of this act of 1877, the provision was that 'bills seeking to divest or clear up the title to lands, etc., may be filed in the district in which the land, or any material part of it, lies.' Taken in connection with the other sections in relation to the jurisdiction of the court as to persons, it is obvious that this simply extended the jurisdiction and that the bill might be filed either where the person of the defendant was found or in the county where the property was located, and therefore, as the legislation then stood, a suit brought in either county, that is, either where the defendant was or where the property was, would be properly brought and not subject to abatement. But the Act of 1877 changes this so as to provide that a suit shall be brought in the county where the property is located. This, of course, would enable the defendant to resist by plea in abatement, motion or demurrer, the jurisdiction of the court when brought in any other county than that in which the property or some portion of it was located."

The decision in that case was affirmed by this court.

In Gibson's Suits in Chancery (Chambliss Ed.), section 177, note 28, it is said:

"All suits relating to land, or injuries to land or liens or incumbrances on land, are *local;* and the reason they are ordinarily required to be brought in the county where the land lies is the records affecting the title, are, ordinarily, in such county, and should remain there."

Counsel for complainant refer to a portion of the opinion in *Crosby Milling Co.* v. *Grant,* 154 Tenn., 379, dealing with general creditors' bills. The matter there referred to, by way of illustration, was suggested by the court in *Johnson* v. *Evans, supra,* 626, and the reference to Gibson's Suits in Chancery was an error. In *Crosby Milling Co.* v. *Grant,* stockholders and officers of an insolvent corporation filed a general creditors' bill in Hamblen County where most of the creditors resided, while its *situs* was in Jefferson County where its real estate was located. One of the creditor banks questioned the jurisdiction of the court in Hamblen County to sell the real property in Jefferson County, and this court sustained its contention and said:

"The chancery court acts *in personam* and may exercise its jurisdiction when material defendants are before the court, but the Legislature may localize the jurisdiction of the court, and this was done by the Act of 1877. As a rule of procedure forbidding actions outside the county where the land or a material part of it lies, the statute is mandatory, and must be observed when parties to the suit assert their right to locality of action which the statute gives."

Sections 4003 and 4914 of Shannon's Code provide that in suits to administer estates the court may decree a sale of lands lying in any part of the State. The question as to whether this rule applies to insolvent bills in the chancery court, as was suggested in *Johnson* v. *Evans, supra,* is not before us, and we express no opinion thereon.

 Complainant further insists that the filing of the injunction suits at Knoxville constituted a contempt, and

.that these parties should not be heard until they have purged themselves thereof.

The chancellor very correctly held otherwise. The owners of the Knox County property had a right to protect their possessions and did not have to submit to the jurisdiction of the Johnson City Court, which, as previously shown, had no jurisdiction over this property. Had the receiver undertaken to forcibly dispossess them they would have been justified in resisting with force, if necessary. Being advised that the receiver was claiming this property and purposed to dispossess them, they were within their rights in bringing suits in the county where the lands are situated to have their rights and interests decreed.

In 34 Cyc., 213, it is said:

"The court exercises no summary jurisdiction over strangers who are in possession of property claiming the right to retain it; the receiver must either proceed by suit against him, or the complainant must make him a party to his suit, and apply to have the receivership extended to the property in his hands, so that an order may be made for its delivery, and may be enforced by process of contempt; and as a general rule the court will not interfere in a summary way as against the possession of a stranger to the action claiming by paramount title, but will leave the question of title to be tried by a proper action to be brought for that purpose."

In 23 Ruling Case Law, 60, the rule is thus stated:

"The general rule is well established that a receiver cannot ordinarily, through summary proceedings, take into custody property found in the possession of strangers to the record claiming adversely, and if he does so he will be liable individually therefor. The principles upon

508

which the cases announcing this rule generally rest are that the receiver merely stands in the place of, and has no greater rights than, the party over whose property he has been appointed receiver; that everyone is entitled to his day in court; and that summary proceedings are not suitable to try conflicting claims to title. The proper course to pursue in cases where a receiver desires to obtain possession of property in the hands of a stranger to the suit, claiming adversely, is either for the receiver to bring an action against the third party, or for the plaintiff to make him a party to the suit and have the receivership extended as to him. Contempt proceedings are not appropriate."

We find no error in the decree of the chancellor, and it will be affirmed.