

2000 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-18-2000

# United States v. Loney

Precedential or Non-Precedential:

Docket 99-5774

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2000

Recommended Citation

"United States v. Loney" (2000). *2000 Decisions.* Paper 149.
http://digitalcommons.law.villanova.edu/thirdcircuit_2000/149

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2000 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed July 18, 2000

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

99-5774

UNITED STATES OF AMERICA

v.

ALEXANDER D. LONEY,

        Appellant

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Criminal No. 99-cr-00275)
District Judge: Honorable John W. Bissell

Submitted Pursuant to Third Circuit LAR 34.1(a)
May 31, 2000

Before: SCIRICA, NYGAARD and COWEN, Circuit Ju dges

(Filed July 18, 2000)

        Andrea D. Bergman, Esq.
        Office of the Federal Public Defender
        972 Broad Street
        Newark, NJ 07l02

         Counsel for Appellant

        George S. Leone, Esq.
        David A. Bocian, Esq.
        Office of the United States Attorney
        970 Broad Street, Rm. 700
        Newark, NJ 07102

         Counsel for Appellee

OPINION OF THE COURT

COWEN, Circuit Judge

When the Newark police arrived at 5:30 in the morning to investigate the scene of a reported burglary, they discovered Alexander Loney standing nearby on his aunt's porch. Frisking him, the officers found hidden in his clothes 29 packets of heroin and a .380 caliber Lorcin semiautomatic pistol loaded with one round of ammunition. The question on appeal is whether the District Court erred when it applied U.S.S.G. S 2K2.1(b)(5) and increased Loney's offense level by four points for possessing a firearm "in connection with" his drug offense. Loney emphasizes that the government has no further evidence tying the gun to his drug trafficking, and he claims the reason he carried the gun was that, after witnessing a friend's murder, he did not trust anyone and felt he needed protection. We will affirm.

I

The United States Sentencing Guidelines require the four-level adjustment when "the defendant used or possessed any firearm or ammunition in connection with another felony offense. . . ." S 2K2.1(b)(5). Loney does not contest that he possessed a firearm, nor does he question that his possession of the drugs constitutes "another felony offense" under the guideline provision. The dispute is over the meaning of the phrase "in connection with." Did Loney possess his gun "in connection with" his drug offense?

The phrase "in connection with," according to Fowler's usage manual, is notable for its "vagueness and pliability." Fowler's Modern English Usage 172 (R.W. Burchfield ed., 3d ed. 1996). Bryan Garner describes the phrase as "always a vague, loose connective, often used in reporting wrongdoing." A Dictionary of Modern American Usage 365 (1998).

Although these usage guides suggest using a narrower term when a more precise meaning is intended, sometimes an expansive phrase like "in connection with" is necessary.

2

Garner cites the example, "The FBI was searching for Mr. Bailey in connection with the stabbing of his friend." Id. Did Mr. Bailey commit the crime or did he just have useful information? The FBI probably did not know, and the words conveyed the uncertainty.

Examples from the Oxford English Dictionary underscore that the phrase "in connection with" is used to capture a very wide variety of different relationships: De Quincey writes, "The war itself, taken in connexion with the bloody feuds that succeeded it, gave a shock to the civilisation of Greece." 1 Oxford English Dictionary 520 (compact edition 1971). Froude's History of England explains, "Except in rare instances, the agricultural labourer held land in connexion with his house." Id. T. Fowler's text on logic instructs, "The student is requested to read this Preface in connexion with Chapter III." Id.

Because we should interpret undefined terms in the guidelines, as in statutes, using the terms' meaning in ordinary usage, see, e.g., Bailey v. United States, 516 U.S. 137, 144–45, 116 S.Ct. 501, 506 (1995) (interpreting statutory language); Williams v. United States , 503 U.S. 193, 200, 112 S.Ct. 1112, 1119 (1992) (interpreting statute and guidelines), the examples above suggest that we should construe S 2K2.1(b)(5) as covering a wide range of relationships between the firearm possession and the other felony offense. "[T]he phrase `in connection with' should be interpreted broadly. . . ." United States v. Thompson, 32 F.3d 1, 7 (1st Cir. 1994). "[T]he meaning of the phrase `in connection with' should be construed expansively." United States v. Wyatt, 102 F.3d 241, 247 (7th Cir. 1996).

In keeping with this breadth, we have previously held that when a defendant accidently fired a gun and killed someone, he used the gun in connection with another felony offense. United States v. Brannan, 74 F.3d 448 (3d Cir. 1996). We added in dictum that the term "connection" can encompass any "causal or logical relation or sequence." Id. at 453 (quoting Webster's Ninth New Collegiate Dictionary 278 (1990)). Although the phrase "in connection with" can carry a different meaning than the term "connection," in part because the former typically functions as a compound preposition and the latter a noun, the

definition of the single term does help us understand the larger phrase.

Like the definition cited in Brannan, other dictionary definitions of the term "connection" are similarly broad: One defines the term simply as "an association or a relationship." American Heritage Dictionary of the English Language 400 (3d ed. 1992). Another explains that the term expresses a "relationship or association in thought (as of cause and effect, logical sequence, mutual dependence or involvement)." Webster's Third New International Dictionary 481 (1961). Another defines it as "association; relationship" and gives as illustrations "the connection between crime and poverty; no connection with any other firm of the same name." Random House Dictionary of the English Language 432 (2d ed. 1987). The OED lists as one sense the "condition of being related to something else by a bond of interdependence, causality, logical sequence, coherence, or the like; relation between things one of which is bound up with, or involved in, another." 1 Oxford English Dictionary 520 (compact edition 1971).

Together these definitions suggest that the phrase"in connection with" expresses some relationship or association, one that can be satisfied in a number of ways such as a causal or logical relation or other type of relationship. We do not attempt to provide an exhaustive list of relationships that will resolve every case. As other courts have observed, "no simple judicial formula can adequately capture the precise contours of the `in connection with' requirement, particularly in light of the myriad factual contexts in which the phrase might come into play. . . ." Wyatt, 102 F.3d at 247. See also Thompson, 32 F.3d at 6 ("[I]t is difficult to sketch the outer boundary" of the relationship expressed by the phrase.).

Despite the wide variety of relationships covered by the usage of the phrase "in connection with," Loney urges that we narrow its meaning and adopt a test requiring the government to prove "some causal nexus" between the gun and the felony, a standard he says was not satisfied in his case. We decline to adopt Loney's proposed test. As an initial matter, we think it is unclear what exactly is supposed to be the source of the causality--the gun, the

4

defendant, the other felony, or something else? And whatever the agent, what qualifies as having the right sort of causal effect? Suppose a defendant carries a concealed gun to a drug deal intending to shoot anyone who steps out of line. If the buyers are docile and the defendant never has reason to reveal his gun, his gun possession might not exert any "causal" effect on anything; but it would grossly distort our usage of "in connection with" to say that the defendant in this example did not possess his gun in connection with his drug offense. Consider that if someone vaccinated herself to avoid disease at her job in a hospital, it would be perfectly natural to say that she received the medical care "in connection with" her job, even though after receiving the inoculation she never encountered the disease at work.

There is a limit, of course, to how much can be proved by invoking dictionary definitions and usage. As the Supreme Court has said: "We consider not only the bare meaning of the word but also its placement and purpose in the statutory scheme. `[T]he meaning of statutory language, plain or not, depends on context.' " Bailey, 516 at 145, 116 S.Ct. at 506 (quoting Brown v. Gardner, 513 U.S. 115, 118, 115 S.Ct. 552, 555 (1994)). See also King v. St. Vincent's Hospital, 502 U.S. 215, 221, 112 S.Ct. 570, 574 (1991).

When we turn to the broader context of S 2K2.1(b)(5), several features conflict with Loney's suggested test. First, our interpretation of S 2K2.1(b)(5) must take into account that the sentence adjustment is not limited to "use" of a firearm but also applies to "possession," so we should not give "in connection with" a meaning so strict that it reads the possession standard out of S 2K2.1(b)(5)."In connection with" is not a synonym for "use." And the Supreme Court has emphasized that we should not interpret one word in a statute in a way that renders other parts of the statute functionless. See, e.g., Bailey, 516 U.S. at 145, 116 S.Ct. at 506.

A second reason for believing that the possession need not have any actual effect on the other felony offense is that the guideline applies to a defendant who merely possesses ammunition. If the guideline's drafters wanted to introduce some requirement of a causal effect through the phrase "in

connection with," it is strange that they expressly provided that the guideline applies to someone who had ammunition but not a firearm.

Despite these broader contextual arguments against requiring proof of some causal effect as a necessary condition, as well as what dictionary definitions and ordinary usage show about the meaning of "in connection with," Loney argues on policy grounds that a four-level adjustment is a lot if "in connection with" is not read narrowly. We are unpersuaded. If the case were decided on bare policy grounds, it is far from clear that a narrow interpretation makes sense. Gun violence is a very serious problem in this country. Ordinary experience as well as empirical research show that when a criminal is armed, the risk of violence and serious harm is greater.

One study cited in a 1996 report by the Department of Justice's Bureau of Justice Statistics states that"of the almost 328,000 State prison inmates serving time for a violent crime in 1991, 30% were armed with a firearm when they committed the crime. Of those armed, 56% said that they fired the gun and most of those who fired said their victims were shot and either wounded or killed." Firearm Injury from Crime 5 http://www.ojp.usdoj.gov/bjs/guns. Another report by the Bureau of Justice Statistics released in 1994 explained:

> Violent offenders are increasingly likely to be armed. . . . While the overall violent crime rate decreased during the last decade, the rate of offenses committed with pistols and revolvers rose from 9.2 percent in 1979 to 12.7 percent in 1992. From 1987 through 1992 there was an annual average of 858,000 rapes, robberies and assaults with firearms of all types, according to the BJS's National Crime Victimization Survey. . . . In a nationally representative sample of state prison inmates, 16 percent said they were carrying a firearm during the commission of the offense for which they were serving time, and one-half of those said they fired the weapon during the crime.

http://www.ojp.usdoj.gov/bjs/pub/press.

6

The Bureau of Justice Statistics also cited a report estimating the costs of injuries caused by assaults with firearms:

> The estimate for medical costs, mental health care, emergency transport, police services, and insurance administration were--$21,700 per fatal gunshot wound[,] $28,000 per gunshot wound requiring hospitalization[, and] $6,500 per gunshot wound treated in the emergency department and released without hospitalization. [The authors] estimated that the total cost per survivor of gunshot wounds caused by assault was $260,000. This figure included direct costs such as medical costs as well as those costs because of lost productivity and pain, suffering, and reduced quality of life. Overall, they estimated that firearm assault injury and death cost $63.4 billion in 1992.

Firearm Injury from Crime 4 http://www.ojp.usdoj.gov/bjs/guns.

The government does not have to wait until a defendant pulls the trigger, uses the gun, or has the gun exert some causal effect before it can increase a defendant's sentence. And as is demonstrated by our earlier discussion of the meaning and context of the phrase "in connection with," we do not think S 2K2.1(b)(5) was drafted to require any of those greater showings by the government. Still, we recognize that the phrase "in connection with" requires that there be some relationship between the gun and the felony. The guideline says more than just that the person committed a felony offense and at some point in time and in some place possessed a gun.

Other courts have recognized this point in comparing the "in connection with" language with the "in relation to" language used in 18 U.S.C. S 924(c)(1). See, e.g., United States v. Spurgeon, 117 F.3d 641, 643-44 (2d Cir. 1997) (per curiam) ("The First, Fourth, Seventh, Ninth, and Tenth Circuits have held that the `in connection with' language of S 2K2.1(b)(5) should be construed as equivalent to the `in relation to' language of 18 U.S.C. S 924(c)(1).") (citations omitted). In explaining the limitation imposed by the phrase

7

"in relation to" in S 924(c)(1), the Supreme Court has stated that the language ensures that the "presence or involvement [of the firearm] cannot be the result of accident or coincidence." Smith v. United States, 508 U.S. 240, 238, 113 S.Ct. 2050, 2059 (1993). More recently the Supreme Court said that the phrase "during and in relation to" in S 924(c)(1) was added

> in part to prevent prosecutions where guns "played" no part in the crime . . . cf. United States v. Stewart, 779 F.2d 538, 539 (C.A.9 1985) (Kennedy, J.) (observing that " `in relation to' " was "added to allay explicitly the concern that a person could be prosecuted . . . for committing an entirely unrelated crime while in possession of a firearm"), overruled in part on other grounds, United States v. Hernandez, 80 F.3d 1253, 1257 (C.A.9 1996).

Muscarello v. United States, 524 U.S. 125, 137, 118 S.Ct. 1911, 1918–19 (1998).

As a matter of ordinary language, one would be hard pressed to find a meaningful difference between"in relation to" and "in connection with." Nevertheless, while the phrase "in relation to" is essentially a synonym for"in connection with," it may not follow that every case applyingS 924(c)(1) is necessarily applicable to S 2K2.1(b)(5), for the Supreme Court recently emphasized that S 924(c)(1) requires that a defendant's use or carrying of a gun must be both"during" and "in relation to" a drug trafficking offense. "[T]he statute [is] applicable only where a defendant `carries' a gun both `during and in relation to' a drug crime." Muscarello, 524 U.S. at 137, 118 S.Ct. at 1918. This caveat about S 924(c)(1) aside, we agree that where the Supreme Court construes just "in relation to," the reasoning can be applied to S 2K2.1(b)(5).

Even once we focus attention on "in relation to," one remaining problem with relying heavily on the Supreme Court's interpretation of the phrase is that the Court has not had occasion to elaborate in any detail on the standard. "We need not determine the precise contours of the `in relation to' requirement here, however, as petitioner's use of his MAC–10 meets any reasonable construction of it."

8

Smith, 508 U.S. at 238, 113 S.Ct. at 2059. Moreover, in response to the Court's narrowing interpretations of S 924(c)(1), Congress recently amended the statute in November of 1998 to include a new clause that makes S 924(c)(1) applicable not only to "use" or "carrying" a firearm but also to "possession." See Gray–Bey v. United States, 209 F.3d 986, 989 (7th Cir. 2000) (noting the amendment). But the new possession standard is not simply added to the list of "use" and "carry," which must be done "during and in relation to" the drug offense; rather the possession must be "in furtherance of " the drug offense. By making this distinction, Congress may well have intended "in furtherance" to impose a more stringent standard than "in relation to." The ordinary meanings of the terms certainly suggest a difference, and it is hard to see why Congress would have bothered to use separate language in a separate clause if a difference was not intended. If this is correct, then the Supreme Court may very well in the future interpret "in relation to" in a way that takes into account the differences between "in furtherance" and "in relation to" in S 924(c)(1). And any distinction drawn between the two phrases seems likely to underscore our point that "in connection with" does not require that a defendant's gun possession cause any particular effect.

Even apart from the foregoing considerations, we think that nothing the Supreme Court has already said about "in relation to" is in any way inconsistent with what we have said here about "in connection with." Indeed, the Court has said, "The phrase `in relation to' is expansive." Smith, 508 U.S. at 237, 113 S.Ct. at 2058. Much as in Muscarello, which gives the Court's most recent statement about "in relation to," the earlier case, Smith, said that the point of "in relation to" was to ensure that the "presence or involvement [of the firearm] cannot be the result of accident or coincidence." Smith, 508 U.S. at 238, 113 S.Ct. at 2059. "[T]he firearm must have some purpose or effect with respect to the drug trafficking crime," or "the gun at least must `facilitat[e], or ha[ve] the potential of facilitating,' the drug trafficking offense." Id. (citations omitted).

In light of these standards Loney's argument can be expressed as saying that there was no relationship between

his gun possession and his possession of distribution quantities of drugs. As Muscarello put it, the gun possession was "entirely unrelated" to the felony offense. Or as Smith puts it, the presence of the gun was merely "accidental," had no "purpose or effect with respect to" his drug offense, or did not "facilitate or have the potential of facilitating" his drug dealing.

At sentencing the government only has to prove guideline enhancements by a preponderance of the evidence, United States v. Dorsey, 174 F.3d 331, 332 (1999), and on appeal, we review a district court's factual findings at sentencing for clear error. United States v. Pitt, 193 F.3d 751, 764 (3d Cir. 1999).

In this case the District Court expressly found that Loney "acknowledged the drugs he had on him were for purposes of sale and not just for personal use. That hasn't been a subject of dispute here." App. at 20. Turning to Loney's statement that he had the gun for personal protection, the District Court concluded that one reason, "if not the only [one]," that Loney felt he needed a gun for protection was his drug dealing. App. at 19. The District Court reasoned that Loney's need for the gun was increased because he possessed valuable and illegal drugs and, if a sale was successful, would later hold significant quantities of cash. It is true that the District Court was drawing inferences from the circumstances, but we think the inferences are reasonable ones. Factfinders routinely, and permissibly, draw inferences when they are evaluating a witness's credibility.

More generally, we conclude that when a defendant has a loaded gun on his person while caught in the midst of a crime that involves in-person transactions, whether involving drugs or not, a district judge can reasonably infer that there is a relationship between the gun and the offense and hence S 2K2.1(b)(5) is satisfied. Cf. United States v. Sturtevant, 62 F.3d 33 (1st Cir. 1995) (per curiam) (guideline applies to defendant who possessed a shotgun during an assault). The immediate availability of the gun while the defendant commits such a crime--that is, to use the Supreme Court's words in Smith, the gun's "potential of facilitating" such an in-person felony offense--is sufficient

10

to establish a relationship between the gun possession and the other offense. In keeping with this reasoning the First Circuit held in Sturtevant that a district court did not abuse its discretion in failing to hold an evidentiary hearing before imposing an enhancement under S 2K2.1(b)(5) on a defendant who possessed a firearm during an assault but who never threatened the victim with the gun. The district court had explained to the defendant that "you were out there on the street with a deadly weapon; it might have been in your pocket, but it was there in reserve." 62 F.3d at 34. The First Circuit affirmed.

> Given the broad reach of the "in connection with" requirement, we think that the carriage of the gun during the assault satisfied the requirement of section 2K2.1(b)(5) that a firearm be "used or possessed . . . in connection with another felony offense. . . ." The courts have held repeatedly that the presence of a readily available weapon in a location containing drugs is enough. . . . Sturtevant carried the shotgun on his person during his assault. The connection between that crime (the assault) and the gun seems to us no less close than the connection between a drug hideout and gun. In each instance, the weapon provides an added sense of security and has a substantial potential for use in the course of the particular crime in question.

Sturtevant, 62 F.3d at 34 (citations omitted). When a defendant has a loaded gun on his person while confronting a victim or buyer in person during an assault, drug deal, or robbery, it is easy to see that the gun has the potential for facilitating these types of crime. As we made clear above, there is no need to show that the defendant's gun possession actually "caused" any particular effect. Cf. United States v. Nale, 101 F.3d 1000, 1003 (4th Cir. 1996) ("In Smith the Supreme Court determined that the `in relation to' language of S 924(c) could be satisfied by proving that a weapon facilitated or potentially facilitated the offense.") (citation omitted); United States v. Routon, 25 F.3d 815, 819 (9th Cir. 1994) ( The guideline is satisfied when "the firearm was possessed in a manner that permits an inference that it facilitated or potentially facilitated--i.e.,

11

had some potential emboldening role in--a defendant's felonious conduct."); United States v. Gomez-Arrellano, 5 F.3d 464, 466-67 (10th Cir. 1993) ("The `in relation to' element is interpreted very expansively. Under S 924(c)(1), this element is satisfied if the government shows that the weapon facilitates or has the potential to facilitate the drug offense, but is not satisfied if the weapon's possession is coincidental or entirely unrelated to the offense. A weapon's physical proximity to narcotics may be sufficient to provide the nexus required between the weapon and the drug charges.") (citations omitted).

The Supreme Court has said that the gun's relationship to a crime should not be "accidental," and Loney no doubt maintains that even if he obviously was intentionally carrying the gun, any relationship between the gun and his drugs was "accidental." A drug dealer who had a hunting rifle buried in his closet might well be able to maintain that the gun's presence around his drug dealing was accidental. Likewise, a judge conceivably might have believed, for instance, that Loney would have dropped his gun off at home and not carried it with him for protection when he actually engaged in drug dealing. But the District Court did not believe that here. While physical proximity alone may be insufficient in some cases, this is not a case, as the First Circuit has said, "of an accountant who, while forging checks, happens to have a gun in the desk drawer." Sturtevant, 62 F.3d at 34-35.

For the foregoing reasons, the August 25, 1999 judgment of the District Court will be affirmed.

A True Copy:
Teste:

        Clerk of the United States Court of Appeals
        for the Third Circuit

12