

2003 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

9-30-2003

# USA v. Gregory

Precedential or Non-Precedential: Precedential

Docket No. 02-3070

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2003

Recommended Citation

"USA v. Gregory" (2003). *2003 Decisions.* Paper 222.
http://digitalcommons.law.villanova.edu/thirdcircuit_2003/222

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2003 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

Filed September 30, 2003

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 02-3070

UNITED STATES OF AMERICA

v.

EDWARD E. GREGORY

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(Criminal Action No. 02-CR-00073-01)
District Judge: Hon. Anita B. Brody

Argued: July 18, 2003

Before: McKEE, BARRY and WEIS, *Circuit Judges.*

(Opinion Filed: September 30, 2003)

ROBERT EPSTEIN, ESQ. (Argued)
Assistant Federal Defender
DINA CHAVAR, ESQ.
Research & Writing Specialist
DAVID L. McCOLGIN, ESQ.
Supervising Appellate Attorney
MAUREEN KEARNEY ROWLEY,
 ESQ.
Chief Federal Defender
Defender Association of Philadelphia,
 Federal Division
Suite 540 West — Curtis Center
Independence Square West
Philadelphia, PA 19106
*Attorneys for Appellant*

JOHN J. PEASE, ESQ. (Argued)
Assistant United States Attorney
ROBERT A. ZAUZMER, ESQ.
Assistant United States Attorney,
 Senior Appellate Counsel
LAURIE MAGID, ESQ.
Deputy United States Attorney for
 Policy and Appeals
PATRICK L. MEEHAN, ESQ.
United States Attorney
615 Chestnut Street, Suite 1250
Philadelphia, PA 19106
*Attorneys for Appellee*

## OPINION OF THE COURT

McKEE, *Circuit Judge*.

We are asked to determine if the district court correctly determined that the defendant possessed a gun "in connection with" his offense of conviction as defined in U.S.S.G. § 2B5.1(b)(4). The district court imposed the three-level sentencing enhancement set forth in that guideline after the defendant pled guilty to violating 18 U.S.C. § 472 (passing or attempting to pass counterfeit currency). It is undisputed that Gregory had a gun on his person when he

committed the crime he pled guilty to. For the reasons that follow, we will remand for further proceedings consistent with this opinion.

**I.**

Edward Gregory was arrested along with an associate after Gregory passed counterfeit currency at Caesar's Palace in Atlantic City, New Jersey. His codefendant had purportedly called him and suggested that they go to Atlantic City to gamble with counterfeit money the co-defendant had. Gregory agreed.

Gregory wore a jacket into the casino and used the counterfeit money to purchase chips. However, after handing the counterfeit money to a teller, he was instructed to step into a back room. Police were called, and a state trooper subsequently entered the room where Gregory was waiting. The trooper advised Gregory that he wanted to question Gregory about counterfeit currency. He then asked if Gregory possessed any weapons. According to statements Gregory made at the ensuing change of plea colloquy, Gregory then realized for the first time that he had a gun in the pocket of his jacket. He immediately told the trooper about the gun, and he was placed under arrest. When asked why he was carrying a gun to the casino, Gregory explained that he had put it in his jacket for protection on an earlier date and simply forgot that he was carrying it when he entered the casino that evening.

Gregory subsequently pled guilty to violating 18 U.S.C. § 472. As we noted at the outset, the district court imposed a three-level enhancement under U.S.S.G. § 2B5.1(b)(4) after accepting Gregory's change of plea and reviewing the presentence report. U.S.S.G. § 2B5.1(b)(4) provides: "If a dangerous weapon (including a firearm) was possessed in connection with the offense, increase by 2 levels. If the resulting offense level is less than level 13, increase to level 13."

Gregory's base offense level before this enhancement was 10, so the court raised it to 13 pursuant to this weapons enhancement. The court then granted a two-level decrease for acceptance of responsibility under U.S.S.G. § 3E1.1(a),

making Gregory's base level 11 and resulting in a sentencing range of 8 to 14 months. The district court then imposed a sentence of four months of imprisonment and four months of house arrest.

## II.

The parties do not agree on the district court's basis for imposing the U.S.S.G. § 2B5.1(b)(4) enhancement. Gregory argues that it was imposed as a matter of law, and the government insists that it is based on a finding of fact. According to Gregory, the court erroneously concluded that the enhancement automatically applied because he had a gun in his possession when arrested. According to the government, the court concluded from the evidence that Gregory did actually possess the gun "in connection with" counterfeit currency and therefore the enhancement was proper. Inasmuch as our analysis turns on the basis for the enhancement, we will begin by determining why the district court applied U.S.S.G. § 2B5.1(b)(4).

More precisely, Gregory argues that the district court expressly stated that it was not resolving the factual dispute about whether or not he possessed the firearm "in connection with" the underlying offense. Instead, he argues that the district court found that *United States v. Loney*, 219 F.3d 281 (3d Cir. 2000), mandates an enhancement under § 2B5.1 for possessing a gun "in connection with" a crime whenever a defendant possesses a gun during an "in-person transaction" such as this counterfeit money offense. Because the district court misunderstood *Loney*, the defendant argues, we should exercise plenary review of the district court's legal conclusions and remand for resentencing.

The government argues that the district court correctly understood that *Loney* merely permits an inference that the gun was possessed in connection with a crime because the gun was on Gregory's person when he committed the offense. It argues that the district court therefore made a factual determination that Gregory had the gun in connection with the counterfeiting offense based on the undisputed facts conceded during the guilty plea colloquy.

We must review the record of the sentencing proceeding to determine whether the court's decision was based upon its legal analysis, or whether it was an exercise of discretion based upon its factual conclusions regarding the offense. *Cf. United States v. Mummert*, 34 F.3d 201, 205 (3d Cir. 1994).

## A. The Sentencing Proceeding

At sentencing, the district court heard argument from the government and the defendant about the applicability of U.S.S.G. § 2B5.1(b)(4). The government argued that the court could reasonably infer that the gun potentially facilitated the offense, i.e. that it was possessed "in connection with" the crime, without finding a causal nexus between the gun possession and the crime itself. It rested its argument on its contention that our holding in *Loney* is not limited to drug transactions though the underlying crime there involved drug dealing. According to the government, the holding as well as the analysis of *Loney* go beyond the realm of drug violations and can be applied with equal force here. The district court explained its interpretation of the application of the enhancement and the scope of *Loney* as follows:

> . . . I think that the defendant is correct that it's fact-intensive. However, I think the standard has been very clearly set forth in the *Loney* case and I think that [a section of the case] says more generally we conclude that when a defendant has a loaded gun on his person while caught in the midst of a crime that involves in-person transactions, whether involving drugs or not, a district judge can reasonably infer that there is a relationship between the gun and the offense . . . .

> There is no requirement for a causal nexus and I don't think that any has been established but it's certainly reasonable to conclude and to infer that that gun was taken to protect currency and to be sure that [the defendant's] person was protected. I don't think it's a strict liability case as stated by the government.

\* \* \*

> I don't think it's terribly persuasive that . . . it was not actually his counterfeit money. I don't think it's relevant that he had a coat on at the time. [The court then names other facts that are not relevant.] I don't think any of those things are relevant for me to decide the applicability of this section. So I think it's a very close question. . . . I assume that you're going to take it up on appeal because it certainly belongs up there.
>
> * * *
>
> [The defendant ought to consider taking an appeal] because I think it is a close question and I think that it's one that can easily be made to the Third Circuit because all the facts are there. *I'm not making any factual determination*, so theirs will be a *de novo* review. So I actually invite an appeal. . . . I invite an appeal because I think it will extend the parameters of the ruling in *Loney*.

R. 78a-80a (emphasis added). Later in the hearing, the court invited the defendant to speak. The defendant responded by offering the following explanation of why he had a gun in his possession when arrested:

> [The codefendant] came to me and . . . he said he had a. . . way that we could get a couple of dollars. It was the same day that we went down there, he just told me that he had the money, and we went down there just on a whim, you know. I always carried the firearm after a few things happened in the past. I've been stuck up a few times . . . I've had a few people threaten me, things like that, so I just felt safer with a firearm on my possession. . . . So, you know, once we got down there I just hopped out of the car, you know, I didn't even really, honestly, think about that I still had a gun.

R. 84a-85a. In response, the court said: "Well, that's kind of decided already on the basis of law." R. 85a. The only reasonable interpretation of the court's response is that it believed that the application of the sentencing enhancement under U.S.S.G. § 2B5.1(b)(4) was "decided already" based upon the plea and the fact a gun was in Gregory's possession, and that the court was therefore obligated to apply the enhancement pursuant to *Loney* "on

the basis of law." Thus, although the court correctly noted that the U.S.S.G. § 2B5.1(b)(4) enhancement is not tantamount to "strict liability," it nevertheless appears to have applied that enhancement based upon nothing other than the fact that Gregory had a gun in his possession when arrested, with no finding whatsoever of a nexus between that possession and his substantive offense. It therefore appears that the court assumed that *Loney* required an enhancement under U.S.S.G. § 2B5.1(b)(4) whether or not the gun was in any way related to Gregory's criminal conduct. This reading is reinforced by the district court's statement that we would have *de novo* review in the event the defendant took the appeal that the court was encouraging. Accordingly, we will take this opportunity to clarify any ambiguity about the scope of our analysis in *Loney*.[1]

## B.   *United States v. Loney*

Loney was discovered standing on a porch at 5:30 a.m. when police responded to a report of a burglary. Upon frisking him, police found approximately 30 packets of heroin and a loaded semiautomatic hand gun. 219 F.3d at 283. He was thereafter arrested and convicted of charges related to his heroin possession. At sentencing, the court applied a sentencing enhancement under U.S.S.G. § 2K2.1(b)(5). That provision provides for a four-point enhancement "for possessing a firearm 'in connection with' [a] drug offense."[2]

---

1. In any event, since our analysis of the record leads us to remand for resentencing, the district court will be in a position to clarify its statement if this is not what it intended.

2. Although *Loney* involved an enhancement "in connection with" a drug offense under U.S.S.G. § 2K2.1(b)(5), and we are concerned with an enhancement "in connection with" a non-drug offense under U.S.S.G. § 2B5.1(b)(4), nothing in the guidelines suggests a reason to distinguish between the operation of those two enhancements other than the offenses they apply to. Therefore, although identical language in different parts of a statute will sometimes have different meanings, we agree with the district court and parties that this is not such a situation, and there is no reason to distinguish the application of U.S.S.G. § 2B5.1(b)(4) from the analysis in *Loney. Cf. In re Cybergenics*, 330 F.3d 548, 559 (3d Cir. 2003) (*en banc*) (stating that there is a natural presumption that identical words used in different parts of the same act are intended to have the same meaning).

On appeal, Loney argued that the sentencing court erred in applying a weapons enhancement because he was carrying the weapon solely for his own protection after witnessing a friend's murder. According to Loney, there was no evidence "tying the gun to his drug trafficking." *Id.* We rejected that argument. In doing so, however, we did not hold that the weapons enhancement automatically attached to possession of a weapon during the predicate criminal offense. Rather, "in connection with" required some relationship between the possession and the substantive criminal offense the enhancement applied to. After discussing several connotations of the phrase "in connection with," we concluded that, "these definitions suggest that the phrase 'in connection with,' expresses some relationship or association, one that can be satisfied in a number of ways such as a causal or logical relation or other type of relationship." *Id.* at 284.

This does not, however, mean that the government must show a causal relationship between the weapon and the criminal offense. As we noted in *Loney,* the enhancement applies to possession as well as use, and a concealed weapon can further a criminal objective even if a defendant never lets anyone know that he/she is in possession of it. *Id.* at 285. In fact, common sense would suggest that the possibility that a drug trafficker has a concealed weapon may well keep those he/she deals with "in line" without the need of ever using the weapon or even revealing it. Therefore, the all-too-familiar potential for violence that infests nearly every aspect of drug trafficking provides the "relationship or association" necessary for the application of a weapons enhancement. However, even in the drug context, this does not mean that the enhancement will automatically apply even though a sentencing court may believe that a given defendant's possession did not facilitate, and was not intended to facilitate, criminal activity. It simply means that the social costs attending possession of firearms, and the dangers endemic in drug trafficking, *allow* an inference that a given defendant possessed a weapon "in connection with" his/her drug trafficking. But *Loney* does not compel that inference, and our analysis there is not to the contrary.[3] Rather, we simply

---

3. If, for example, a security guard or law enforcement officer purchased cocaine from a street level dealer as the guard/officer was on his/her

held that the circumstances attendant to drug sales justify a rebuttable inference that weapons are possessed "in connection with" that trafficking and, therefore, a person possessing weapons under such circumstances is subject to the prescribed weapons enhancement.

Here, however, the record is unclear as to whether the district court believed that the circumstances of Gregory's possession were sufficient to support a conclusion that he possessed the gun "in connection with" the counterfeiting, or whether the court merely concluded that the enhancement for doing so *automatically* attached to the possession. The former situation would allow for an enhancement under U.S.S.G. § 2B5.1(b)(4) which we would review to determine if that factual conclusion was clearly supported by the record. The latter situation, however, would be an erroneous application of U.S.S.G. § 2B5.1(b)(4) which we would afford *de novo* review. *United States v. Bennett*, 161 F.3d 171, 190 (3d Cir. 1998), *cert. denied,* 528 U.S. 819 (1999) ("When reviewing the imposition of a sentence under the federal sentencing guidelines, the District Court's findings of fact are measured by the clearly erroneous test, but our review of the legal component of its conclusion is plenary." (internal citations omitted)).

The district court never clearly stated that it found that the gun was possessed in connection with the offense based on the undisputed facts. However, the court did suggest that to be the basis for the enhancement. It stated: "it is certainly reasonable to conclude and to infer that that gun was taken to protect currency and to be sure that his person was protected." As noted above, this is consistent with the court's pronouncement that the facts here did not involve "strict liability." However, as also noted above, the

way home from work, and was thereafter arrested for possession of a controlled substance, he/she might be able to convince a sentencing court that the gun in his/her possession at the time of arrest was purely incidental to having just gotten off from work and had nothing to do with the drug transaction. If the court believed that testimony, or if other circumstances were sufficient to rebut or negate the inference that normally arises in the context of possessing weapons while involved with controlled substances, a weapons enhancement would not apply.

court also clearly stated that it was not making any factual finding and that our review would be *de novo,* thus suggesting a purely legal question. This suggests a misreading of *Loney,* for all the reasons we have explained,[4] and a "strict liability" application of the enhancement despite the court's statement to the contrary. The most appropriate way to resolve this ambiguity is simply to allow the district court to clarify its application of the enhancement and, if appropriate, to reconsider that application pursuant to our explanation of *Loney.*

## III.

Accordingly, for all the reasons set forth above, we will remand to the district court for further proceedings consistent with this opinion.

---

4. The district court used the term "in-person" crime to describe the circumstances when a gun would be possessed "in connection with" the underlying offense. Although there is some appeal to this limitation, it is too narrow. *Loney* involved a suspected burglary, although the defendant was arrested when drugs were found in his possession. However, had Loney been apprehended in possession of a firearm while burglarizing an abandoned property that he knew to have been vacant, we can not rule out the possibility that a sentencing court could still conclude that such possession was "in connection with" the burglary even though one could not fairly describe that crime as an "in-person" crime. For example, if the circumstances allowed an inference that he possessed the weapon to assist in flight if apprehended, the necessary relationship between the criminal activity and the firearm would still exist even if the crime were truly not an "in-person" crime. However, we note that the relationship must rest on something other than pure speculation. As we note above, the circumstances endemic to drug trafficking can establish the relationship without engaging in speculation. However, when a court is faced with crimes that do not suggest the same potential for violence as drug trafficking, the relationship becomes far more tenuous, and the danger of unwarranted speculation increases. This may, in fact, have been what the district court was suggesting by referring to "in-person" crimes.

11


A True Copy:
        Teste:

*Clerk of the United States Court of Appeals*
*for the Third Circuit*