**Commonwealth v. Johnson**

C.P. of Delaware County, no. 1436-10.

*John F.X. Reilly,* for Commonwealth.
*Patrick J. Connors,* for defendant.

JENKINS, *J.*, December 14, 2010—After a non-jury trial, the court found Dennis Johnson guilty of possession of a controlled substance (cocaine) with intent to deliver ("PWID"), conspiracy to possess with intent to deliver and possession of drug paraphernalia ("PDP"). The court sentenced Johnson to 3-6 years imprisonment for PWID, a consecutive term of two years probation for conspiracy and a concurrent term of probation for PDP. This timely direct appeal followed.

Johnson contends in this appeal that the evidence was insufficient to support his convictions. The court disagrees and recommends that his judgment of sentence be affirmed.

When reviewing a challenge to the sufficiency of the evidence, Pennsylvania appellate courts must view all the evidence and all reasonable inferences therefrom in the light most favorable to the Commonwealth, the verdict winner. *Commonwealth v. Widmer,* 560 Pa. 308, 319, 744 A.2d 745, 751 (Pa. 2000). The evidence is sufficient

to support the verdict when it establishes each material element of the crime charged against the defendant beyond a reasonable doubt. *Id.* An appellate court "may not weigh the evidence and substitute [its] judgment for the fact-finder." *Commonwealth v. Cassidy*, 668 A.2d 1143, 1144 (Pa. Super. 1995). "The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence." *Commonwealth v. Cunningham*, 805 A.2d 566, 571 (Pa. Super. 2002), alloc. denied, 573 Pa. 663, 820 A.2d 703 (Pa. 2003).

Construed under this standard, the evidence adduced at trial was as follows: State Trooper Scott Miscannon testified that in January 2010, he and other officers were investigating drug-related activity at a residence at 1125 Meadow Lane in Chester, Pennsylvania ("the premises"). Tr., 6/29/10 ("Tr."), p. 19. Trooper Miscannon personally conducted surveillance of the premises and observed numerous individuals going in and out of the premises. Tr. 21-22. On two occasions between December 9, 2009 and January 8, 2010, the trooper observed Johnson entering the premises without using a key or knocking. Tr. 22.

On January 8, 2010, Trooper Miscannon obtained a warrant to search the premises for controlled substances and related paraphernalia. Tr. 21. That afternoon, he and other law enforcement officers executed the warrant by entering an open screen door leading into the foyer of the premises. Tr. 24. There were three black females, two black males and a baby in a small living room next to the foyer. Tr. 23-24. In the next room, the kitchen, a male threw two small packets of marijuana into the sink while attempting to flee through the back door. Tr. 24, 27.

Trooper Miscannon found a scale, baggies and a cutting agent in the kitchen which drug traffickers use to dilute their substances in order to maximize profits. Tr. 28-29.

Johnson was sitting on a chair in the living room. Tr. 50. Corporal James Heins discovered a bag on the floor in plain view directly below Johnson's left hand containing 27 bags of crack cocaine and 17 bags of white powder cocaine. Tr. 50-52, 62. No other person was near Johnson's chair. Tr. 55, 60. There were also brass knuckles and a knife on the floor, Tr. 31, 44, and a brown sandwich bag on a television stand in the corner containing clear, blue and green plastic bags. Tr. 30, 44. Another female in the living room had four bags of marijuana on her person, and a trooper recovered a bag next to her containing ten baggies of cocaine. Tr. 75-76.

There were no drugs on Johnson's person, but he was carrying $234 in cash and two cellphones in his pockets. Tr. 51, 63-64. There was no indication that he resided at the premises. Tr. 51, 55. The police did not test the bag on the floor next to Johnson or the baggies inside for fingerprints, because they have never successfully identified fingerprints on baggies of controlled substances. Tr. 52, 56. There was no evidence that the officers found paraphernalia commonly associated with consumption of cocaine on Johnson's person.

After his arrest, Johnson acknowledged at the State Police barracks that his nickname was "Shake". Trooper Miscannon referred to him in his presence as "Shake," and Johnson never denied that "Shake" was his nickname or fail to respond when that nickname was used. Tr. 56.

Trooper Michael Skahill, the Commonwealth's expert

in the fields of illegal drugs, drug investigation, and drug distribution, opined that the 27 baggies of crack cocaine and 17 baggies of powder cocaine next to Johnson were for distribution, not mere possession, because of the following combination of details: (1) the drugs were individually packed for retail distribution, (2) each bag was worth $20.00, (3) they were packaged in small amounts because addicts are not able to purchase drugs in bulk, (4) Johnson had two prepaid cellphones[1], (5) it is common practice for drug traffickers to use multiple prepaid cellphones to prevent non-consensual interceptions of conversations by law enforcement, (6) Johnson had $234 in cash on his person, (7) it is common practice for drug traffickers to carry street denominations on their person, (8) there were clear, new and unused zip-lock baggies in the living room, a common "tool" of retail drug distribution, and (9) there was a cutting agent and a digital scale used to divide up drugs for distribution. Tr. 105, 108-09.

*1. The evidence was sufficient to support Johnson's conviction for PWID.*

PWID requires proof beyond a reasonable doubt that the defendant possessed a controlled substance and did so with the intent to deliver it. *Commonwealth v. Conaway,* 791 A.2d 359, 362 (Pa. Super. 2002). The Commonwealth may establish the essential elements of the crime wholly by circumstantial evidence; all facts and circumstances surrounding the possession are relevant. *Commonwealth*

---

1. Trooper Skahill opined that one phone was a Boost mobile phone and the other was an Metro PCS. Tr. 111-12. A consumer can purchase either type of phone with blocks of prepaid minutes at a Wal-Mart or Sprint store without providing any subscriber information. Tr. 105, 113. When the consumer uses up the minutes, he/she can throw the phone away. Tr. 113.

*v. Drummond*, 775 A.2d 849, 853-54 (Pa. Super. 2001). Factors to consider in determining whether the drugs were possessed with the intent to deliver include the particular method of packaging, the form of the drug, and the behavior of the defendant. *Commonwealth v. Kirkland*, 831 A.2d 607, 610 (Pa. Super. 2003).

The first element of PWID is proof of possession. Since the officers did not find drugs on Johnson's person, the Commonwealth must prove that he constructively possessed the drugs found near his chair. *Commonwealth v. Bricker*, 882 A.2d 1008, 1014 (Pa. Super. 2002) ("As the drugs were not found on [a]ppellant's person, the Commonwealth was required to establish that he constructively possessed the crack cocaine"). Constructive possession is "a legal fiction, a pragmatic construct to deal with the realities of criminal law enforcement. Constructive possession is an inference arising from a set of facts that possession of the contraband was more likely than not." *Commonwealth v. Mudrick*, 510 Pa. 305, 308, 507 A.2d 1212, 1213 (Pa. 1986). Constructive possession is "conscious dominion," that is, the power to control the contraband and the intent to exercise that control. *Commonwealth v. Macolino*, 503 Pa. 201, 206, 469 A.2d 132, 134 (Pa. 1983); *Commonwealth v. Thompson*, 779 A.2d 1195, 1199 (Pa. Super. 2001). It may be inferred from the totality of the circumstances using circumstantial evidence, Macolino, supra, 469 A.2d at 134, and it may be found "in one or more actors where the item in issue is in an area of joint control and equal access." *Commonwealth v. Valette*, 531 Pa. 384, 388, 613 A.2d 548, 550 (Pa. 1992). Mere presence at the scene or mere proximity of controlled substances in close proximity to the defendant, however, is not sufficient to

prove constructive possession. *Commonwealth v. Keblitis,* 500 Pa. 321, 324, 456 A.2d 149, 151(Pa. 1983).

There is sufficient evidence of constructive possession to support Johnson's conviction for PWID. The premises had been under police surveillance for one month for suspected drug-related activities. Trooper Miscannon saw Johnson enter the premises on two occasions without a key and without knocking during the period of police surveillance. On January 8, 2010, when law enforcement executed the search warrant, Johnson was within arm's reach of the baggies of cocaine and crack that Corporal Heins seized in the living room of the premises. The drugs were in plain view; nobody else was near them except Johnson. A knife, brass knuckles and empty bagging materials were also nearby. Other individuals in the living room and kitchen were in possession of, or attempting to hide or discard, marijuana or cocaine, and there were cutting agents and a digital scale in the kitchen. There were no items suggesting personal consumption of the drugs.

Standing alone, Johnson's proximity to controlled substances and drug-related objects does not establish constructive possession. But there is more. Johnson had on his person two prepaid cellphones and $234 in cash - staple items of drug dealers which explain his relationship to the drugs in his proximity. Cf. *United States v. Loney,* 219 F.3d 281, 289 (3d Cir. 2000) (citing *United States v. Gomez-Arrellano,* 5 F.3d 464, 466-67 (10th Cir.1993) ("a weapon's physical proximity to narcotics may be sufficient to provide the nexus required between the weapon and the drug charges"). Since Johnson sat next to 44 baggies of cocaine and crack that were in plain view, *and* nobody else was near these baggies, and he had well-known tools

of the drug dealing trade on his person, and all events took place at a location infested with other drugs, baggies, *and* distribution mechanisms, common sense dictates that he had dominion and control over the 44 baggies at his feet.

Having established that Johnson was in constructive possession of the 44 baggies of drugs, it follows under these circumstances that he possessed the drugs with intent to distribute them. The Commonwealth's expert testified convincingly that the division of the drugs into 44 baggies and the discovery of cellphones and cash on Johnson's person demonstrated his intent to sell the drugs. It also is significant that there was no paraphernalia on Johnson's person commonly associated with personal consumption of cocaine. See e.g., *Commonwealth v. Conaway*, 791 A.2d 359, 363 (Pa. Super. 2002) (evidence sufficient to sustain PWID conviction, since 60 baggies of crack cocaine were found in apartment rented by defendant and police found no drug paraphernalia indicative of personal use); *Commonwealth v. Torres*, 421 Pa. Super. 233, 238, 617 A.2d 812, 814 (Pa. 1992), app. denied, 535 Pa. 618, 629 A.2d 1379 (Pa. 1993) (evidence sufficient to support PWID conviction where defendant possessed 4.63 grams of cocaine in 17 individual packets, $236 in currency, and arresting officer did not discover any drug paraphernalia commonly associated with consumption of cocaine and expert witness testified that in his opinion above-mentioned facts indicated that defendant possessed cocaine with intent to deliver, rather than for his own personal use); *Commonwealth v. Dargon*, 72 D. & C. 4th 395, 417 (Lackawanna Cty. 2005) (evidence of PWID sufficient where defendant had actual or constructive possession of 60 individual bags of heroin, 26 grams of crack cocaine

and 5.2 grams of cocaine hydrochloride, there was no paraphernalia associated with drug consumption, there was serialized "buy money" in car seat last occupied by defendant, and he was in possession of $1,092 in cash).

  2.  *The evidence was sufficient to support Johnson's conviction for conspiracy.*

  To sustain a conviction for criminal conspiracy, the Commonwealth must establish that the defendant (1) entered into an agreement to commit or aid in an unlawful act with another person or persons, (2) with a shared criminal intent and (3) an overt act was done in furtherance of the conspiracy. *Commonwealth v. Murphy,* 795 A.2d 1025 (Pa. Super. 2002), aff'd, 577 Pa. 275, 844 A.2d 1228 (Pa. 2004). Circumstantial evidence may provide proof of the conspiracy. *Commonwealth v. Davalos,* 779 A.2d 1190 (Pa. Super. 2001), appeal denied, 567 Pa. 756, 790 A.2d 1013 (Pa. 2001). "The conduct of the parties and the circumstances surrounding such conduct may create a 'web of evidence' linking the accused to the alleged conspiracy beyond a reasonable doubt." *Commonwealth v. Morton,* 355 Pa. Super. 183, 512 A.2d 1273, 1275 (Pa. 1986), appeal denied, 514 Pa. 624, 522 A.2d 49 (Pa. 1987). Additionally, an agreement can be inferred from a variety of circumstances including, but not limited to, the relation between the parties, knowledge of and participation in the crime, and the circumstances and conduct of the parties surrounding the criminal episode. These factors may coalesce to establish a conspiratorial agreement beyond a reasonable doubt where one factor alone might fail. *Commonwealth v. Greene,* 702 A.2d 547, 554 (Pa. Super. 1997).

The circumstantial evidence herein shows that Johnson conspired to sell controlled substances with other persons inside the crack house. Prior to the search warrant, Johnson had twice entered the premises without a key or knocking, demonstrating that he enjoyed some degree of control over this location. At the time of the search, he was sitting in the living room in constructive possession of 44 baggies of crack and cocaine and in physical possession of cellphones and cash. There were brass knuckles and a knife on the living room floor and baggies on a television stand in the corner. Three females and two males were in the living room with Johnson. One female had four bags of marijuana on her person and ten baggies of cocaine next to her. Another male who attempted to escape during the search discarded two bags of marijuana in the kitchen next to the living room. There also was a scale, baggies and a cutting agent in the kitchen but no evidence suggesting personal consumption. Viewed collectively, Johnson's access to the premises, the assorted drugs, weapons and paraphernalia held by other persons in the living room and kitchen, the cellphones and cash on defendant's person and the drugs in his constructive possession demonstrate that he was collaborating with the other individuals to sell the drugs in his and their possession. *Commonwealth v. Braswell,* 2007 WL 5004350 (York Cty. 2007) (sufficient evidence existed to convict defendant for criminal conspiracy to possess with intent to deliver cocaine; officers executed a search warrant on residence, defendant and coconspirator were found sleeping in residence and mail addressed to defendant was found in residence, during search officers uncovered 15.12 grams of cocaine and 61.2 grams of marijuana, numerous pieces of packaging material, and four cellular telephones and over $6,000 in cash, and no

drug use paraphernalia was found in residence).

3. *The evidence was sufficient to sustain Johnson's conviction for possession of drug paraphernalia.*

Section 780-113(a)(32) of the Controlled Substance, Drug, Device and Cosmetic Act prohibits

> [t]he use of, or possession with intent to use, drug paraphernalia for the purpose of planting, propagating, cultivating, growing, harvesting, manufacturing, compounding, converting, producing, processing, preparing, testing, analyzing, packing, repacking, storing, containing, concealing, ingesting, inhaling or otherwise introducing into the human body a controlled substance in violation of this act. 35 Pa.C.S. § 780-113(a)(32).

"Drug paraphernalia" means all equipment, products and materials of any kind which are used, intended for use or designed for use in planting, propagating, cultivating, growing, harvesting, manufacturing, compounding, converting, producing, processing, preparing, testing, analyzing, packaging, repackaging, storing, containing, concealing, injecting, ingesting, inhaling or otherwise introducing into the human body a controlled substance in violation of this act. It includes, but is not limited to

> (1) Kits used, intended for use or designed for use in planting, propagating, cultivating, growing or harvesting of any species of plant which is a controlled substance or from which a controlled substance can be derived.

> (2) Kits used, intended for use or designed for use in manufacturing, compounding, converting, producing,

processing or preparing controlled substances.

(3) Isomerization devices used, intended for use or designed for use in increasing the potency of any species of plant which is a controlled substance.

(4) Testing equipment used, intended for use or designed for use in identifying or in analyzing the strength, effectiveness or purity of controlled substances.

(5) Scales and balances used, intended for use or designed for use in weighing or measuring controlled substances.

(6) Diluents and adulterants, such as quinine hydrochloride, mannitol, mannite, dextrose and lactose, used, intended for use or designed for use in cutting controlled substances.

(7) Separation gins and sifters used, intended for use or designed for use in removing twigs and seeds from or in otherwise cleaning or refining marihuana.

(8) Blenders, bowls, containers, spoons and mixing devices used, intended for use or designed for use in compounding controlled substances.

(9) Capsules, balloons, envelopes and other containers used, intended for use or designed for use in packaging small quantities of controlled substances.

(10) Containers and other objects used, intended for use or designed for use in storing or concealing controlled substances.

(11) Hypodermic syringes, needles and other objects

used, intended for use, or designed for use in parenterally injected controlled substances into the human body.

(12) Objects used, intended for use or designed for use in ingesting, inhaling or otherwise introducing marihuana, cocaine, hashish or hashish oil into the human body, such as:

(i) Metal, wooden, acrylic, glass, stone, plastic or ceramic pipes with or without screens, permanent screens, hashish heads or punctured metal bowls.

(ii) Water pipes.

(iii) Carburetion tubes and devices.

(iv) Smoking and carburetion masks.

(v) Roach clips; meaning objects used to hold burning material such as a marihuana cigarette, that has become too small or too short to be held in the hand.

(vi) Miniature cocaine spoons and cocaine vials.

(vii) Chamber pipes.

(viii) Carburetor pipes.

(ix) Electric pipes.

(x) Air-driven pipes.

(xi) Chillums.

(xii) Bongs.

(xiii) Ice pipes or chillers.

In determining whether an object is drug paraphernalia,

a court or other authority should consider, in addition to all other logically relevant factors, statements by an owner or by anyone in control of the object concerning its use, prior convictions, if any, of an owner, or of anyone in control of the object, under any State or Federal law relating to any controlled substance, the proximity of the object, in time and space, to a direct violation of this act, the proximity of the object to controlled substances, the existence of any residue of controlled substances on the object, direct or circumstantial evidence of the intent of an owner, or of anyone in control of the object, to deliver it to persons who he knows, or should reasonably know, intend to use the object to facilitate a violation of this act, the innocence of an owner or of anyone in control of the object, as to a direct violation of this act should not prevent a finding that the object is intended for use or designed for use as drug paraphernalia, instructions, oral or written, provided with the object concerning its use, descriptive materials accompanying the object which explain or depict its use, national and local advertising concerning its use, the manner in which the object is displayed for sale, whether the owner, or anyone in control of the object, is a legitimate supplier of like or related items to the community, such as a licensed distributor or dealer of tobacco products, direct or circumstantial evidence of the ratio of sales of the objects to the total sales of the business enterprise, the existence and scope of legitimate uses for the object in the community, and expert testimony concerning its use.

35 Pa.C.S. § 780-102.

As discussed above, the baggies on the television stand and the cutting agent and digital scale in the kitchen help explain Johnson's relationship to the drugs at his feet (constructive possession). A trickier question, however, is whether Johnson was in constructive possession of the items on the television stand and in the kitchen. Fortunately, the court need not wander into this thicket, because the evidence already demonstrates Johnson's constructive possession of other paraphernalia, namely the baggies at his feet containing cocaine and crack. See 35 Pa.C.S. § 780-102(10) (drug pararaphernalia includes "containers and other objects used, intended for use or designed for use in storing or concealing controlled substances"). For this reason alone, the court properly found Johnson guilty of possession of drug paraphernalia.

## IV. *Conclusion*

Therefore, the court recommends that Johnson's judgment of sentence be affirmed.