**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 19-1469

UNITED STATES OF AMERICA

v.

LESANDRO PEREZ, also known as TOAST,

Appellant

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Criminal Action Nos. 2-17-cr-00596-001; 2-17-cr-
00597-001 and 2-17-cr-00599-001)
District Judge: Honorable Robert F. Kelly

Argued on January 26, 2021

Before: AMBRO, SHWARTZ, AND BIBAS, Circuit Judges

(Opinion filed: July 22, 2021)

Christy Martin, Esq. **(Argued)**
Federal Community Defender Office for the Eastern District
of Pennsylvania
601 Walnut Street
The Curtis Center, Suite 540 West
Philadelphia, PA 19106

Counsel for Appellant

Sarah Damiani, Esq.
Bernadette A. McKeon, Esq.
Robert A. Zauzmer, Esq. **(Argued)**
Office of United States Attorney
615 Chestnut Street
Suite 1250
Philadelphia, PA 19106

Counsel for Appellee

_____

OPINION OF THE COURT
_____

AMBRO, <u>Circuit Judge</u>

Lesandro Perez pled guilty to federal firearm and drug offenses arising from, among other things, selling guns to an undercover law enforcement officer. The Sentencing Guidelines recommended between 84 and 105 months' imprisonment for Perez's crimes. But at the Government's urging, the District Court applied a sentencing enhancement that brought Perez's recommended prison time up to 121 to

151 months. The reason? The undercover officer observed that Perez had guns and drugs together in the same room.

We now decide whether the mere physical proximity between guns and drugs is enough to justify the significant increase in Perez's Guidelines range. We hold that it is not. While the Commentary to the Guidelines, on which the District Court relied, deserves deference, we are persuaded that the Court misapplied it in this instance. We believe the Commentary creates a rebuttable presumption, rather than a bright-line rule, that the enhancement should apply when a defendant possesses guns and drugs together. We therefore vacate the District Court's judgment and sentence and remand for further proceedings.

## I. BACKGROUND

Over a six-month period in 2017, Perez sold firearms and controlled substances to various confidential informants and undercover officers. On March 9, 2017, he sold two firearms to an undercover officer.[1] Perez kept those guns under a mattress in the room where he conducted the transaction. During it the officer observed drugs, drug-packaging materials, and drug paraphernalia in the same room as the two guns.

Perez was later charged in three separate indictments in the Eastern District of Pennsylvania, all involving sales of guns or drugs. One of the indictments concerned the March 9th

---

[1] Perez also sold a third firearm that day to the undercover officer at another location, but that transaction is not at issue here.

transaction. Perez ultimately pled guilty to all three indictments. The Sentencing Guidelines range was 121 to 151 months, based on a total offense level of 29 and a criminal history of IV. This calculation included a four-level enhancement per U.S. Sentencing Guidelines Manual § 2K2.1(b)(6)(B) (U.S. Sentencing Comm'n 2016), which applies when the defendant "used or possessed any firearm . . . in connection with another felony offense." While there were numerous other sales in the three indictments, the Government conceded that the March 9th transaction was the only arguable basis for the enhancement.

Perez objected to the enhancement at sentencing, arguing that he did not use the guns "in connection with" his felony drug-trafficking offense because he was merely offering the guns for sale in the same room as the drugs. But the District Court overruled the objection and concluded that the enhancement applied because the guns "were in close proximity to drugs and . . . drug material." App. 109. The Court thus applied the initial total offense level of 29 and criminal history of IV, and sentenced Perez to 121 months' imprisonment followed by five years' supervised release. On appeal, he renews his argument that the four-level enhancement does not apply because he possessed the firearms to sell them, and thus they should not be deemed as used or possessed in connection with a drug-trafficking offense based solely on their close proximity to drugs.

## II. JURISDICTION AND STANDARD OF REVIEW

The District Court had subject-matter jurisdiction over this prosecution for federal crimes under 18 U.S.C. § 3231. We

4

have jurisdiction to review Perez's sentence under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

When a defendant does not contest the facts of his offense, we review without deference a district court's interpretation of the Guidelines. *United States v. Bell*, 947 F.3d 49, 54 (3d Cir. 2020). Here, Perez does not contest the facts of the March 9th transaction. Rather, he argues that the District Court made a legal error in interpreting the Guidelines to require a four-level enhancement any time guns are physically near drugs or drug paraphernalia. We thus conduct a fresh review of the Court's decision.[2]

---

[2] The Government argues that we review the District Court's decision for only clear error under *United States v. Richards*, 674 F.3d 215, 219–20 (3d Cir. 2012). But in *Richards* "the District Court's interpretation of the Guidelines [was] not really at issue," as the defendant did not contest the Court's "articulation" of the Guidelines standard. *Id.* at 218; *see also Bell*, 947 F.3d at 54 (discussing the factual nature of the *Richard* Court's inquiry). In contrast, we have often held that we review anew a district court's legal interpretation of the Guidelines. *See, e.g.*, *United States v. Nasir*, 982 F.3d 144, 156 (3d Cir. 2020) (*en banc*); *United States v. Metro*, 882 F.3d 431, 437 (3d Cir. 2018). And before us is not a situation in which the Guidelines "set[] forth a predominantly fact-driven test" such that "the legal issue decided by the district court is, in essence, a factual question." *United States v. Thung Van Huynh*, 884 F.3d 160, 165 (3d Cir. 2018) (alteration in original) (quoting *Richards*, 674 F.3d at 220, 223). Perez is complaining about a purely legal error with no factual component at all. We therefore decline to adopt the Government's proposed approach.

## III.  ANALYSIS

Section 2K2.1(b)(6)(B) of the Sentencing Guidelines requires a four-level sentencing enhancement in cases where a defendant "used or possessed any firearm . . . in connection with another felony offense."   U.S. Sentencing Guidelines Manual § 2K2.1(b)(6)(B) (U.S. Sentencing Comm'n 2016). The Sentencing Commission's Commentary to this provision, however, applies different rules based on the type of other felony involved.  By default, the enhancement applies under Note 14(A) of the Commentary "if the firearm . . . facilitated, or had the potential of facilitating, another felony offense." U.S. Sentencing Guidelines Manual § 2K2.1 cmt. n.14(A) (U.S. Sentencing Comm'n 2016).

But when the other felony offense is drug trafficking, Note 14(B) creates a special rule: The four-level enhancement applies as long as the firearm "is found in close proximity to drugs, drug-manufacturing materials, or drug paraphernalia." *Id.* § 2K2.1 cmt. n.14(B).  This special rule is justified "because the presence of the firearm has the potential of facilitating another felony offense."  *Id.*

Because Perez's other felony was a drug-trafficking offense, the District Court applied the more severe rule in Note 14(B).   And the Court took a broad view of that rule, concluding that Perez used or possessed guns in connection with a drug-trafficking offense because he kept them in close proximity to drugs and drug paraphernalia.  We must therefore decide what weight, if any, to give Note 14(B) as an interpretation of the "in connection with" requirement of

6

§ 2K2.1(b)(6)(B).  We then turn to whether the District Court properly applied Note 14(B) in this case.

## A.    The *Auer* deference framework applies to Sentencing Guidelines Commentary.

The "plain and unambiguous language" of the Guidelines is the best course for their interpretation. *United States v. Kluger*, 722 F.3d 549, 556 (3d Cir. 2013) (quoting *United States v. Wong*, 3 F.3d 667, 670 (3d Cir. 1993)).  But "[t]he extent to which the [G]uidelines' [C]ommentary controls our interpretation of the [G]uidelines themselves is informed by principles of administrative law." *United States v. Nasir*, 982 F.3d 144, 157 (3d Cir. 2020) (en banc), *petition for cert. filed on other grounds*, 89 U.S.L.W. 3378 (U.S. Apr. 30, 2021) (No. 20-1522).  The Guidelines "are the equivalent of legislative rules adopted by federal agencies," so Commentary is "treated as an agency's interpretation of its own legislative rule." *Stinson v. United States*, 508 U.S. 36, 44–45 (1993).  This means the Commentary is subject to the rules of *Auer* deference. *Nasir*, 982 F.3d at 157; *see also id.* at 157 n.12 (citing, among others, *Auer v. Robbins*, 519 U.S. 452 (1997)).  Under this standard, Commentary "that interprets or explains a [G]uideline is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that [G]uideline." *Stinson*, 508 U.S. at 38.

However, the Supreme Court recently articulated several limitations on *Auer* deference in *Kisor v. Wilkie*, 139 S. Ct. 2400 (2019).  First, an agency's interpretation of its own rules is entitled to that deference "only if a regulation is genuinely ambiguous." *Id.* at 2414.  But before so concluding,

7

"a court must exhaust all the traditional tools of construction." *Id.* at 2415 (internal quotation marks omitted). Second, if a regulation is genuinely ambiguous, the agency's interpretation must be reasonable. *Id.* And third, even if an agency's interpretation is reasonable, "a court must make an independent inquiry into whether the character and context of the agency interpretation entitle[] it to controlling weight." *Id.* at 2416. Of special importance in this analysis is whether the interpretation is the agency's "authoritative" or "official position," *id.* (internal quotation marks omitted); whether it "implicate[s] [the agency's] substantive expertise," *id.* at 2417; and whether it "reflects [the agency's] fair and considered judgment"—that is, the interpretation cannot be a "convenient litigating position" or a "*post hoc* rationalizatio[n]" for past agency action, *id.* (alteration in original) (internal quotation marks omitted).

We applied this scaled-back approach to the Guidelines' Commentary in *United States v. Nasir*, emphasizing that the plain text of the Guidelines should control unless the language is genuinely ambiguous. 982 F.3d at 158–60. We acknowledged that previous Supreme Court precedent seemed to allow Commentary to expand the scope of the Guidelines beyond the Guidelines text itself "if the [G]uideline which the commentary interprets will bear the construction." *Id.* at 157 (quoting *Stinson*, 508 U.S. at 46). But we joined the Sixth Circuit in concluding that "separation-of-powers concerns advise against any interpretation of the [C]ommentary that expands the substantive law set forth in the [G]uidelines themselves." *Id.* at 159; *see also id.* (citing *United States v. Havis*, 927 F.3d 382, 386 (6th Cir. 2019) (en banc) (per curiam)).

Under *Kisor*, then, as interpreted by our Court in *Nasir*, we afford the Guidelines' Commentary *Auer* deference when the Guidelines' language is ambiguous, the Commentary itself is reasonable, and the "character and context" of the Commentary "entitle[] it to controlling weight." *Kisor*, 139 S. Ct. at 2414–17. We must also be wary of Commentary that "expands the substantive law set forth in the [G]uidelines themselves," and we should apply the plain text of the Guidelines whenever possible. *Nasir*, 982 F.3d at 159–60.

## B. Note 14(B) is entitled to *Auer* deference.

### i. *Kisor* Steps One and Three

With these principles in mind, we turn to Guideline § 2K2.1(b)(6)(B) and Commentary Note 14(B). We first decide whether the Guideline is "genuinely ambiguous" before relying on the Commentary. *See Kisor*, 139 S. Ct. at 2415. Again, § 2K2.1(b)(6)(B) provides that a four-level enhancement applies if the defendant "used or possessed any firearm . . . *in connection with* another felony offense" (emphasis added). Perez argues that because the "in connection with" language of § 2K2.1(b)(6)(B) plainly requires "some relationship between the gun and the drug offense," the Guideline itself is unambiguous. Perez's Br. at 14.

We disagree. We may only conclude that the Guideline is ambiguous after we have "exhaust[ed] all the traditional tools of construction." *Kisor*, 139 S. Ct. at 2415 (internal quotation marks omitted). Thus we "carefully consider[] the text, structure, history, and purpose" of the Guideline. *Id.* (alteration in original) (internal quotation marks omitted); *see*

9

*also Nasir*, 982 F.3d at 158. None of these considerations weigh against finding ambiguity here, and two weigh particularly in favor.

First, the text. We have yet to consider whether § 2K2.1(b)(6)(B) is genuinely ambiguous under *Kisor*. That said, we have previously observed, before Note 14's addition to the Commentary in 2006, that the phrase "in connection with" is "notable for its vagueness and pliability." *United States v. Loney*, 219 F.3d 281, 283 (3d Cir. 2000) (internal quotation marks omitted); *see also United States v. West*, 643 F.3d 102, 112 (3d Cir. 2011) (discussing the addition of Note 14). Indeed, "no simple judicial formula can adequately capture the precise contours of the 'in connection with' requirement, particularly in light of the myriad factual contexts in which the phrase might come into play." *Loney*, 219 F.3d at 284 (quoting *United States v. Wyatt*, 102 F.3d 241, 247 (7th Cir. 1996)). We have nonetheless spoken of its "broad[]" and "expansive[]" meaning. *See id.* (internal quotation marks omitted). Thus the text of § 2K2.1(b)(6)(B) suggests, but does not establish, its ambiguity.

What confirms the Guideline's ambiguity is the history of its text. After our first attempt to define the phrase "in connection with," the Sentencing Commission added Note 14 to the Commentary to "address a growing conflict among circuits regarding the interpretation of § 2K2.1(b)(6)." *See West*, 643 F.3d at 112; *see also* U.S. Sentencing Guidelines Manual app. C (commenting, in Amendment 691, that Note 14 was adopted to "address[] a circuit conflict pertaining to the application of" § 2K2.1(b)(6)). This conflict was based, at least in part, on disagreement concerning whether the phrase "in connection with" encompassed those cases where the

10

firearm's presence was merely accidental or coincidental. *See, e.g.*, *United States v. Young*, 115 F.3d 834, 838 (11th Cir. 1997). And this disagreement continues among circuit courts today. *See infra* Section III.C. We are therefore persuaded by the text and history of § 2K2.1(b)(6)(B) that the Guideline is ambiguous and meets *Kisor*'s first requirement.

As for *Kisor* step three, Note 14(B) meets its requirements because its character and context entitle it to controlling weight. *See Kisor*, 139 S. Ct. at 2416–17. The parties do not contest that the Note is the Sentencing Commission's official position or that it implicates the Commission's substantive expertise. *See id.* The parties also do not argue that the Commission's views as provided in the Note are "merely [a] convenient litigating position" created for this or another case. *See id.* at 2417 (internal quotation marks omitted). We concur that the Commentary meets these three markers, and nothing about its character or context counsels against deference. *See id.* at 2416–17. Hence Note 14(B) meets *Kisor* step three.

### ii. *Kisor* Step Two

So we are left with step two: whether, under *Kisor*, Note 14(B) is reasonable. According to Perez, the "in connection with" language of § 2K2.1(b)(6)(B) requires a relationship between the guns and drugs. But Note 14(B), he contends, mandates that the enhancement applies any time guns and drugs are in close physical proximity to each other even if there is no relationship between them. Perez thus argues that the Note conflicts with the Guideline and is therefore an unreasonable interpretation of it.

11

We agree that the Note would be unreasonable if it applied in the way Perez argues (which is also the way the District Court appeared to apply it). But we are not convinced it is so unforgiving. Our conclusion rests in part on the origin of the language the Sentencing Commission chose for the Note, which indicates that the "potential to facilitate" requirement necessarily excludes cases in which the presence of firearms was merely accidental.

We begin with the Supreme Court's decision in *Smith v. United States*, 508 U.S. 223 (1993). There the Court considered 18 U.S.C. § 924(c)(1), which requires certain penalties if the defendant, "during and in relation to any crime of violence or drug trafficking crime[,] . . . uses or carries a firearm." *See id.* at 227. As the defendant in that case did not dispute that he used a firearm "during" a drug-trafficking offense, the Court focused in part on whether his use of the firearm was "in relation to" the other offense. *Id.* at 237.

While the Court declined to "determine the precise contours" of the provision, *id.* at 238, it

> clarifie[d] that the firearm must have some purpose or effect with respect to the drug trafficking crime; its presence or involvement cannot be the result of accident or coincidence. . . . [T]he "in relation to" language "allay[s] explicitly the concern that a person could be" punished under § 924(c)(1) for committing a drug trafficking offense "while in possession of a

12

firearm" even though the firearm's presence is coincidental or entirely "unrelated" to the crime. Instead, the gun at least must "*facilitat[e], or ha[ve] the potential of facilitating*," the drug trafficking offense.

*Id.* (alterations in original) (emphasis added) (citations omitted). The Court ultimately concluded that the defendant, who had traded a gun for drugs, met the "in relation to" requirement. *Id.* This was because the gun's presence "was an integral part of the [drug] transaction" rather than "the product of happenstance." *Id.* (internal quotation marks omitted).

We built on *Smith*'s approach in *United States v. Loney*, 219 F.3d 281 (3d Cir. 2000), which we decided before the Sentencing Commission added Note 14 to the Guidelines' Commentary. *Loney* held that the enhancement in § 2K2.1(b)(6)(B) (then § 2K2.1(b)(5)) applied when the defendant was arrested with twenty-nine packets of heroin and a loaded pistol on his person. *Id.* at 283. The defendant argued that "in connection with" required "some causal nexus" between the gun and the other felony, but we rejected his proposed standard. *Id.* at 285. Rather, we determined that "in connection with" meant there had to be "some relationship or association" between the firearm and the other felony, which could be "a causal or logical relation or other type of relationship." *Id.* at 284.

In so holding, we relied significantly on *Smith* by acknowledging that it considered the phrase "in relation to," rather than "in connection with," and that the two phrases may

13

not be fully synonymous. *Id.* at 287. Nonetheless, we adopted the *Smith* Court's reasoning insofar as both phrases "ensure[]" that the firearm's "presence or involvement . . . cannot be the result of accident or coincidence." *Id.* at 286 (quoting *Smith*, 508 U.S. at 238). We thus held that the "in connection with" requirement would exclude situations in which "the presence of the gun was merely 'accidental,' had no 'purpose or effect with respect to' [the defendant's] drug offense, or did not 'facilitate or have the potential of facilitating' [the defendant's] drug dealing." *Id.* at 287–88 (quoting *Smith*, 508 U.S. at 238).

Applying these principles, *Loney* stated that "when a defendant has a loaded gun on his person while caught in the midst of a crime that involves in-person transactions, whether involving drugs or not, a district judge can reasonably infer that there is a relationship between the gun and the offense." *Id.* at 288. In contrast, we acknowledged there may not be a relationship between a firearm and a drug offense when, for example, a drug dealer has a "hunting rifle buried in his closet," even if the gun was present "around his drug dealing." *Id.* at 289. We thus concluded that "physical proximity alone may be insufficient in some cases" to establish a relationship between guns and drugs. *Id.*

We next considered the language of § 2K2.1(b)(6)(B) in *United States v. West*, 643 F.3d 102 (3d Cir. 2011), which we decided after the Sentencing Commission adopted Note 14. The issue was whether the enhancement in § 2K2.1(b)(6)(B) applied even though the District Court had not made any specific findings that the revolver "facilitated or had the potential to facilitate" the defendant's drug possession under Note 14(A). *See id.* at 115. Thus *West* concerned drug

14

possession under subsection (A) rather than drug trafficking under subsection (B).  *Id.* at 113–14.

We adopted the approaches of the Fourth, Fifth, and Eighth Circuits in holding that, "in a simple possession case, the sentencing court must make a specific finding that the firearm facilitated or had the potential of facilitating possession of the drugs."  *Id.* at 114.  But we emphasized that mere physical proximity would not be enough to support such a finding.  *Id.* at 116.  We relied on *Smith* and *Loney* in holding that "[w]hile a weapon's physical proximity to narcotics may be sufficient to show a connection between the weapon and the drug charges in some cases, . . . where the predicate drug offense is possession, mere proximity is insufficient to establish the required nexus."  *Id.* (internal citations omitted).  Note 14(B), however, created different rules for drug-trafficking cases; in that circumstance, a sentencing court could "presume" that a firearm was used "in connection with" the drug-trafficking offense based on physical proximity.  *Id.* at 114.

Although they do not directly address Note 14(B), the decisions in *Smith*, *Loney*, and *West* lead us to several helpful conclusions.  The first is that the "potential to facilitate" requirement, which originated in *Smith* and is now part of subsection (B), excludes those cases in which the firearm's presence is "the result of accident or coincidence."  *Smith*, 508 U.S. at 238; *see also* U.S. Sentencing Guidelines Manual app. C (noting, in Amendment 691, that Note 14 adopts language from *Smith*).  Note 14(B) therefore aligns with both *Smith* and our pre-Note decision in *Loney*, where we held that the "in connection with" language of § 2K2.1(b)(6)(B) created an identical requirement.  *Loney*, 219 F.3d at 287 (citing *Smith*,

15

508 U.S. at 238). Given this significant overlap, we cannot say that Note 14(B) is unreasonable as written. It is therefore entitled to *Auer* deference.

But *Loney* and *West* lead us to another significant conclusion—that "physical proximity alone may be insufficient in some cases" to establish that the firearm had the potential to facilitate drug activity. *Id.* at 289; *see also West*, 643 F.3d at 116; *accord United States v. Angel*, 576 F.3d 318, 321 (6th Cir. 2009) (affirming that "[p]ossession of firearms that is merely coincidental to the underlying felony offense is insufficient to support the application of § 2K2.1" (internal quotation marks omitted)). This standard requires "some relationship" between the firearm and the defendant's drug offense. *Loney*, 219 F.3d at 286. And while *West* dealt specifically with drug-possession offenses, *see* 643 F.3d at 116, the drug possessor and the drug trafficker alike could coincidentally have a hunting rifle buried in a closet, *see Loney*, 219 F.3d. at 289. So our conclusion in *West*—which was itself a reaffirmation of *Loney*—applies with similar force here.

We are further persuaded that the "relationship" standard in *Loney* and *West* is the correct one because the Sentencing Commission itself adopted it. In 2014 the Commission adopted Note 14(E), which provides in relevant part that "[i]n determining whether subsection[] (b)(6)(B) . . . appl[ies], the court must consider the relationship between the instant offense and the other offense." § 2K2.1 cmt. n.14(E); *see United States v. Harper*, 766 F.3d 741, 747 (7th Cir. 2014) (discussing the 2014 amendment). While it does not spell out precisely how a court must weigh this relationship, Note 14(E) further demonstrates that the Commission did not intend for § 2K2.1(b)(6)(B) to apply in

16

cases where the firearm's presence was mere accident or coincidence.

Practically speaking, this means that a sentencing court cannot stop reading Note 14(B) after the "close proximity" language in the first sentence. It must continue to the second sentence, which provides that the Note should apply in cases where "the presence of the firearm has the potential of facilitating" a drug-trafficking offense. *See* § 2K2.1 cmt. n.14(B). And it must further take into account Note 14(E), which directs sentencing courts to "consider the relationship" between the firearm and drug-trafficking offenses. *See* § 2K2.1 cmt. n.14(E). The Note thus provides some "boundaries," which we explain more fully below, for when the enhancement should apply. *See Smith*, 508 U.S. at 237. As those boundaries are closely tied to ones approved by the Supreme Court in *Smith*, we do not disturb them. *See id.* at 238.

In sum, Note 14(B) is entitled to *Auer* deference as a reasonable interpretation of an ambiguous Guideline. The Note incorporates certain "boundaries" laid out by the Supreme Court in *Smith*. *See id.* at 237. Those boundaries require a relationship between drug-trafficking activities and firearms. *Loney*, 219 F.3d at 287. Hence the enhancement does not apply merely because Perez possessed firearms, drugs, and drug paraphernalia together in the same room.

17

**C.     Note 14(B) creates a rebuttable presumption that the enhancement applies when a firearm is in close proximity to drugs or related items.**

But we cannot stop there.  Just as the "potential to facilitate" language in Note 14(B) has meaning, so too does the Note's "close proximity" requirement.  We see this point most clearly when we compare the language of Note 14(B) with that of Note 14(A).

Again, Note 14(A) creates a general rule that the enhancement in § 2K2.1(b)(6)(B) should apply if a firearm "facilitated, or had the potential of facilitating, another felony offense." § 2K2.1 cmt. n.14(A).  The Note directly applies the *Smith* standard with no alterations.  *See Smith*, 508 U.S. at 238. But when the other offense is drug trafficking, Note 14(B) provides that the enhancement should apply when "a firearm is found in close proximity to drugs" or related items, as "the presence of the firearm has the potential of facilitating another felony offense."  § 2K2.1 cmt. n.14(B).  Note 14(B), then, creates a special rule for drug traffickers by focusing on the proximity between guns and drugs.  This makes it different from Note 14(A).  But, like subsection (A), it also adopts the "potential to facilitate" language from *Smith*.  *See Smith*, 508 U.S. at 238.

The upshot of this comparison is that we cannot wholly collapse the requirements of Note 14(B) into the "potential to facilitate" standard from *Smith*, as Note 14(A) adopts the *Smith* standard as the general rule for all kinds of felony offenses. Subsection (B) must mean something different from (A), and the "close proximity" language suggests that this distinction should center on the physical proximity between the guns and

18

the drugs.  But, as previously discussed, Note 14(B) must also account for the limitation in *Smith* that the presence of the firearm cannot be accidental or coincidental.

Given these strictures, we hold that Note 14(B) creates a rebuttable presumption that the enhancement should apply for a drug-trafficking offense when a firearm is found in close proximity to drugs or related items.  We already suggested this approach in *West*, as we said there in a *dictum* that Note 14(B) permits a court to "presume" that, when the underlying felony is drug trafficking, § 2K2.1(b)(6)(B) applies when a firearm is in close proximity to drugs.  643 F.3d at 114.  Several of our sister circuits have used similar language in discussing Note 14(B).  *See, e.g.*, *United States v. Slone*, 990 F.3d 568, 572 (7th Cir. 2021) ("Application Note 14(B) creates a presumption that the § 2K2.1(b)(6)(B) enhancement is warranted whenever guns are found in close proximity to drugs . . . or drug paraphernalia." (internal quotation marks omitted)); *United States v. Bolden*, 964 F.3d 283, 287 (4th Cir. 2020) ("[U]nder Application Note 14(B), a firearm found in close physical proximity to drugs presumptively has the potential of facilitating the trafficking offense." (internal quotation marks omitted)); *United States v. Eaden*, 914 F.3d 1004, 1007 (5th Cir. 2019) (observing that Note 14(B) "provide[s] for a presumption of facilitation when a firearm is possessed in close proximity to a drug trafficking offense").

This approach incorporates the boundaries suggested by the "potential to facilitate" language while also heeding the "close proximity" requirement that distinguishes Note 14(B) from its companion subsection (A).  Under our understanding of subsection (B), a court may presume that a firearm is used or possessed in connection with a drug-trafficking offense if

19

the firearm is found in close proximity to drugs or related items.  But because the presumption is rebuttable, a defendant may present evidence that the firearm had no relationship to drug-related activities (*i.e.*, that the presence of the firearm was mere accident or coincidence) and thus did not have the potential to facilitate a drug-trafficking offense.[3]  *See Loney*, 219 F.3d at 287.

In deciding whether a defendant has successfully rebutted the presumptive relationship between firearms and drug-trafficking activities based on proximity alone, a sentencing court may look to any factors it deems relevant.  By

---

[3] Our concurring colleague suggests that this approach "mistakenly relieves the Government of its burden of proof" in criminal cases by requiring the defendant "to *disprove* a connection."  Concurring Op. 10.  But the initial burden of proving that the presumption applies still rests with the Government.  It is only *after* the Government has carried its burden—by showing that the guns and drugs were physically near each other—that the defendant must disprove a connection.  This approach works much like an affirmative defense.  *See, e.g.*, 18 U.S.C. § 2252(c) (providing an affirmative defense to a child pornography possession charge where the defendant possesses less than three images and promptly destroyed the images or reported the matter to law enforcement).  In that circumstance, the Government has the initial burden of proving all elements of a crime—but if it succeeds, the burden shifts to the defendant to prove that he or she is entitled to the defense.  As affirmative defenses in criminal cases do not typically offend the Constitution, *see Patterson v. New York*, 432 U.S. 197, 210–11 (1977), we discern no impermissible burden shifting here.

analogy, we have considered a similar presumption under U.S.S.G. § 2D1.1(b)(1)[4] and identified factors that will ordinarily matter: (1) the type of gun involved, with handguns more likely to be connected with drug trafficking than hunting rifles; (2) whether the gun was loaded; (3) whether the gun was stored (or, we add, possessed) near the drugs or drug-related items; and (4) whether the gun was accessible.[5] *See United*

---

[4] Sentencing Guidelines § 2D1.1(b)(1) is essentially the mirror image of § 2K2.1(b)(6)(B). It provides that, in a conviction for unlawful manufacturing, importing, exporting, or trafficking of drugs, "[i]f a dangerous weapon (including a firearm) was possessed, increase [the offense level] by 2 levels." U.S. Sentencing Guidelines Manual § 2D1.1(b)(1) (U.S. Sentencing Comm'n 2018). Thus the underlying offense for § 2D1.1(b)(1) is drug trafficking (with the enhancement applying to conduct involving a firearm), while the underlying offense for § 2K2.1(b)(6)(B) is unlawful possession (etc.) of a firearm (with the enhancement applying to conduct involving drug trafficking, among other offenses). But both enhancements potentially require a sentencing court to consider the connection between a defendant's drug-trafficking activities and firearms.

[5] Our holding today is limited to the observation that these factors will often, though perhaps not always, be relevant to deciding whether § 2K2.1(b)(6)(B) applies. But not all authority concerning § 2D1.1(b)(1) will be relevant to § 2K2.1(b)(6)(B), as the Commentary for § 2D1.1(b)(1) creates a special standard not present in Note 14(B). *See* U.S. Sentencing Guidelines Manual § 2D1.1 cmt. n.11 (U.S. Sentencing Comm'n 2018) (providing that § 2D1.1(b)(1) should apply "if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense").

*States v. Napolitan*, 762 F.3d 297, 308 (3d Cir. 2014). We think these factors provide a helpful starting point for Note 14(B) as well. But again, the primary inquiry under § 2K2.1(b)(6)(B) must be whether there is a relationship between the firearm and the defendant's drug-trafficking offense. *See Loney*, 219 F.3d at 287. That relationship may be presumed if the firearm is found in close proximity to drugs or related items, but the defendant must have the opportunity to disprove it based on the facts of each case.

We acknowledge that other circuits have interpreted Note 14(B) in *dicta* to mean that the enhancement "necessarily" or "automatically" applies when drugs and guns are physically near each other. *See, e.g.*, *United States v. Jeffries*, 587 F.3d 690, 692–93 (5th Cir. 2009); *see also United States v. Jenkins*, 566 F.3d 160, 163 (4th Cir. 2009) (noting that a nearby firearm "necessarily" has the potential to facilitate a drug-trafficking offense under Note 14(B)); *United States v. Blankenship*, 552 F.3d 703, 705 (8th Cir. 2009) ("Note 14(B) mandates application of the adjustment if guns and drugs are in the same location."). And at least two other circuits have directly held that for Note 14(B) "close proximity is all that is required." *United States v. Paneto*, 661 F.3d 709, 718 (1st Cir. 2011); *accord United States v. Carillo-Ayala*, 713 F.3d 82, 92 (11th Cir. 2013) ("A firearm found in close proximity to drugs or drug-related items simply '*has*'—without any requirement for additional evidence—the potential to facilitate the drug offense." (emphasis in original)).

Though this rule is consistent with the District Court's approach here, we are unpersuaded by this position. First, *Loney* is controlling precedent in our Circuit, and it squarely held that the "in connection with" requirement of

22

§ 2K2.1(b)(6)(B) necessarily excludes those cases in which the firearm's presence was accidental or coincidental. *See* 219 F.3d at 287. Under *Loney* we cannot, unlike our sister circuits, apply Note 14(B) without regard to that constraining consideration. A contrary conclusion would impermissibly "expand[] the substantive law set forth in the [G]uidelines themselves." *Nasir*, 982 F.3d at 159.

Second, as we already discussed, the text of Note 14 itself does not require such a rigid construction. It specifically directs sentencing courts to the reasoning behind the "close proximity" requirement: the firearm's potential to facilitate drug-trafficking activity. *Smith* made clear that a firearm does not have the potential to facilitate drug-trafficking activity if its presence was mere accident or coincidence. *See* 508 U.S. at 238. And we have already interpreted "potential to facilitate" as requiring some kind of "relationship" between the firearm and the drug activity, which is also consistent with Note 14(E). *See Loney*, 219 F.3d at 287.

Third, the courts that have discussed this issue in *dicta* may have interpreted Note 14(B) rigidly because they concluded that was the only way to distinguish it from Note 14(A). *See, e.g.*, *Jenkins*, 566 F.3d at 163 (emphasizing the difference between Note 14(A) and (B)); *Blankenship*, 552 F.3d at 705 (same). Put differently, these courts may have believed that the only way to distinguish the two provisions was to conclude that Note 14(B) must automatically require the enhancement's application when guns and drugs are in close proximity to each other. But they did not have the benefit of Note 14(E), as it was added several years after they issued their

23

decisions.[6] Plus our approach distinguishes Note 14(A) from (B)—as only the latter creates a presumption based on proximity—while still being true to the text of Note 14 itself and our holdings in *Loney* and *West*.

\* \* \* \* \*

Our holding here avoids the problem of a drug trafficker who coincidentally has a "hunting rifle buried in his closet." *Loney*, 219 F.3d at 289. Under Note 14(B), a sentencing court may presume that a firearm is used or possessed "in connection with" a drug-trafficking offense under § 2K2.1(b)(6)(B) if the firearm is found in close proximity to drugs or drug paraphernalia. But the defendant must have a chance to prove that the firearm's presence was mere accident or coincidence. Because Perez did not have that chance,[7] we vacate the District Court's judgment and sentence and remand for the Court to reconsider whether there was a relationship between Perez's firearms and his drug-trafficking activities.

---

[6] *Jenkins* and *Blankenship* were decided in 2009; Note 14(E) was added in 2014. *See Harper*, 766 F.3d at 747 (discussing Note 14(E)'s addition).

[7] The Government has not argued that any error on this point was harmless, perhaps because the application of an incorrect Guidelines range "rarely" meets this standard. *See United States v. Langford*, 516 F.3d 205, 217 (3d Cir. 2008). Thus the error here warrants remand.

BIBAS, *Circuit Judge*, concurring in the judgment.

Judges are not editors. When an agency interprets its own regulation, we must take its interpretation as we find it. Either it deserves *Kisor* deference as written or it does not.

Here, Note 14(B) is invalid as written because it substitutes proximity for a connection to a drug crime. The majority admits that this reading of the Guideline would be unreasonable. So it misreads the Note to create a rebuttable presumption and then defers to its own creation. But that innovation generates its own problem. In criminal cases, the Government must prove every element of a crime and every fact that enhances a sentence. Yet the majority's rebuttable presumption flips that burden, forcing Perez to *disprove* a connection between the gun and the drugs. If the evidence is scant or equal, the presumption defaults to raising his sentence. That is unjust.

Because the majority's reading does not square with the wording of the Note and reverses the burden of proof, I concur only in the judgment.

## I. NOTE 14(B) UNREASONABLY INTERPRETS THE REQUIRED "CONNECTION" BETWEEN THE GUN AND THE FELONY

The Note does not fit the Guideline. The text of the Guideline requires a gun to *relate* to the other felony. But in drug cases, the Note deems that relationship present whenever the gun is found *near* drugs. Yet nearness alone does not make a gun relate to a crime. Because the Note strays too far from the Guideline that it claims to interpret, we should not defer to it.

**A. The Guideline enhances a sentence only when the defendant's gun possession relates to another felony causally or logically**

The Guideline authorizes a sentence enhancement only when the defendant possesses a gun or ammunition "in connection with another felony." U.S.S.G. §2K2.1(b)(6)(B). "Connection" means a "causal or logical relation or sequence." *Connection* (def. 1a), *Webster's Ninth New Collegiate Dictionary* (1988); *accord Connexion* (def. 3), *Oxford English Dictionary* (2d ed. 1989) ("a bond of interdependence, causality, logical sequence, coherence, or the like"). If a drug dealer uses a gun to fight off a rival dealer (or packs heat because it *might* help him fight off rivals), the gun furthers his drug dealing.

But closeness in time or space is not enough. Two strangers may sit next to each other on a plane for hours, yet no one would say they are travelling "in connection with" each other. A knife block may sit on a kitchen counter, next to a stove where a drug dealer cooks crack cocaine, yet have no "connection with" the crack.

We held as much two decades ago, before the Sentencing Commission wrote Note 14(B). When we first interpreted the Guideline, we defined "in connection with" as "express[ing] some relationship or association, … such as a causal or logical" one. *Loney*, 219 F.3d at 284. Under that reading, the Guideline would reach a drug dealer caught carrying a handgun while selling drugs. *Id.* at 288. One could reasonably infer that he carried it to protect himself from drug-related violence. But the Guideline might well not apply if the drug dealer kept a hunting

2

rifle in his closet. *Id.* at 289. The rifle might not be bound up with the drug deal.

That reading relied on the Supreme Court's similar reading of a gun-crime law in *Smith*. *Id.* at 287 (quoting *Smith v. United States*, 508 U.S. 223, 238 (1993)). Under 18 U.S.C. § 924(c), a defendant earns a mandatory extra sentence if he uses or carries a gun "during and in relation to" a violent or drug-trafficking crime. For gun possession to be "in relation to" drug trafficking, the gun "must have some purpose or effect" on that crime. *Smith*, 508 U.S. at 238. Put another way, the gun must facilitate, or at least potentially facilitate, that crime. *Id.* Accidental or coincidental gun possession is not enough. *Id.*

In short, a gun is not possessed "in connection with" a crime unless it is somehow "involved in" or "related to" it. *Loney*, 219 F.3d at 284 (quoting *Oxford English Dictionary*). The text of the Guideline asks whether the gun related to the crime causally or logically.

### B. In drug-trafficking cases, the Note calls for an enhancement whenever a gun is found near drugs

Though the Guideline requires us to ask about causation and purpose, Note 14(B) adopts per se rules for burglary and drug cases. In drug-trafficking cases, the Note applies the enhancement whenever "a firearm is found in close proximity to drugs." It applies even if the gun had no effect on a crime, and even if the defendant had the gun for reasons unrelated to the crime. The gun need only be nearby, even accidentally or coincidentally.

### C. Because the Note does not fit within the Guideline's "zone of ambiguity," it is not entitled to *Kisor* deference

*Kisor* reminded courts not to defer reflexively to an agency's reading of its own regulation. 139 S. Ct. at 2415. Before *Kisor*, we gave an agency's reading "controlling weight unless it is plainly erroneous or inconsistent with the regulation." *Id.* at 2411 (quoting *Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410, 414 (1945)). *Kisor* deference, we have held, applies to the Sentencing Commission's commentary on the Guidelines. *Nasir*, 982 F.3d at 158–59.

So now, we must first confirm that the Guideline is ambiguous. *Id.* at 2415. To do that, we have to "exhaust all the 'traditional tools' of construction." *Id.* (quoting *Chevron, U.S.A. Inc. v. NRDC*, 467 U.S. 837, 843 n.9 (1984)). If those tools yield only one answer, the Guideline's text controls, not the Commission's later reading. If not, the text is ambiguous.

Second, even if there *is* an ambiguity, the Commission's reading must be reasonable. *Id.* at 2415–16. The Commission cannot choose a meaning that has been ruled out. In other words, its reading must fall within the remaining "zone of ambiguity." *Id.* Only then can we defer to it. (*Kisor* also lists other requirements that are not implicated here. *Id.* at 2416–18.)

Yet the majority treats the Guideline as ambiguous without first examining the text. True, the phrase "in connection with" is "broad" and "expansive." Maj. Op. 10 (quoting *Loney*, 219 F.3d at 284) (brackets omitted). But "a term … is not ambiguous merely because it is broad in scope." *In re Phila.*

4

*Newspapers, LLC*, 599 F.3d 298, 310 (3d Cir. 2010). Here, the text has a single core meaning: a causal or logical relationship, not a spatial one. *Loney*, 219 F.3d at 284; *see also Da Silva v. Att'y Gen.*, 948 F.3d 629, 635–36 & n.34 (3d Cir. 2020) (holding that, in immigration law, "connected to" unambiguously means "having a causal or logical relationship") (citing *Loney*). So the text is not ambiguous.

Even if there were any ambiguity, it would be about the type of relationship required, either causal or logical: whether the gun must have enabled the defendant to commit the crime or just potentially helped him do so.

Under the plain text, the defendant's gun possession must be involved with and related to the other felony. Yet the Note extends well beyond a causal or logical link to a crime. It authorizes the enhancement whenever the gun is found near drugs. But under the Guideline's text, just being nearby is not enough. This *spatial* relationship falls outside any textual ambiguity because it does not ensure a *causal or logical* relationship between the gun and the crime. So the Note improperly "expands the [Guideline's] substantive law." *Nasir*, 982 F.3d at 159. It deserves no deference.

The majority disagrees, holding that the Note controls. Yet it agrees that "the Note would be unreasonable if it applied" as I have described it. Maj. Op. 11. And it agrees that *Loney* correctly defined the "connection" standard. *See id.* at 19–20. The majority defers to the Note only because it misreads the Note's clear rule.

5

## II. THE MAJORITY MISREADS THE NOTE

The Note provides:

**14. Application of Subsections (b)(6)(B) and (c)(1). –**

…

**(B) Application When Other Offense is Burglary or Drug Offense. –**

Subsections (b)(6)(B) and (c)(1) apply

…

(ii) *in the case of a drug trafficking offense in which a firearm is found in close proximity to drugs, drug-manufacturing materials, or drug paraphernalia.*

In these cases, application of subsections (b)(6)(B) and, if the firearm was cited in the offense of conviction, (c)(1) is warranted because the presence of the firearm has the potential of facilitating another felony offense or another offense, respectively.

U.S.S.G. §2K2.1 cmt. n.14(B) (emphasis and line breaks added).

The italicized clause sets forth a clear rule. Yet the majority sets aside the plain meaning of the Note, adopted by the District Court, the parties, and every circuit to consider the issue. Instead, it turns the Note's rationale into part of the rule. And with no textual basis, it transforms the Note's rule into a rebuttable presumption.

6

### A. The majority misreads the Note's last sentence as limiting the close-proximity rule

Under the Note's rule (italicized above), the enhancement "appl[ies]" when "a firearm is found in close proximity to drugs"—period. The next sentence explains not *what* the Note's rule requires, but *why*: this per se rule "*is warranted* because the presence of the firearm has the potential of facilitating another" crime. *Id.* (emphasis added).

So the Note's last sentence is a rationale: the Commission crafted the per se rule "because" the gun could facilitate another crime. *Id.* The Note treats that as true whenever a gun is near drugs. Under the Note, a sentencing judge need not also find that the gun's presence was deliberate or that the gun *in fact* could have facilitated drug trafficking. Whenever guns are found near drugs, it says, the enhancement applies "automatically." *Jeffries*, 587 F.3d at 692–93.

Yet the majority reads this rationale into the rule. The majority says that the last sentence "provides that the Note *should* apply in cases where 'the presence of the firearm has the potential of facilitating' a drug-trafficking offense." Maj. Op. 17 (emphasis added). That phrase, it claims, "necessarily excludes cases in which the presence of firearms was merely accidental." *Id.* at 12. But that rationale is not part of the rule. The structure of the Note makes that clear.

Indeed, the District Court did not read the explanation to limit the rule. At oral argument, the Government agreed: the Note sets forth "a very clear rule." Oral Arg. Tr. 30. The defendant's purpose does not matter. *Id.* at 31. If a drug dealer's

7

hunting rifle is near the drugs, even coincidentally, "this enhancement applies." *Id.* And as the majority concedes, our sister circuits uniformly read the Note as applying the enhancement automatically whenever drugs are near guns. Maj. Op. 22. Though my colleagues try to distinguish these cases, their efforts fail.

True, years later, the Commission did add a separate subsection to Note 14. That subsection, 14(E), tells courts to consider the relationship between the two crimes before applying the enhancement. But this general instruction does not repeal or amend 14(B)'s drug-specific per se rule. Because a general rule does not displace a more specific one, 14(B), not 14(E), governs cases involving drugs and guns. *See, e.g.*, *Green v. Bock Laundry Mach. Co.*, 490 U.S. 504, 524 (1989). And 14(B) states that the Guideline applies whenever guns are found near drugs—no relationship required.

The majority also says that only this circuit is bound by *Loney*'s holding that the Guideline cannot cover accidental or coincidental firearms. Maj. Op. 22. But *Loney* predates 14(B). And "prior judicial constructions of a particular guideline cannot prevent the Commission from adopting a conflicting interpretation." *Stinson*, 508 U.S. at 46, *overruled in irrelevant part by Kisor*, 139 S. Ct. at 2411 n.3, 2414–18. So *Loney* does not tell us how to read 14(B). I agree that *Loney*'s reading is reasonable. But rather than relying on that case to misread the Note, I would just hold that 14(B)'s conflicting reading is unreasonable and unworthy of deference.

## B. The majority turns the Note's conclusive presumption into a rebuttable one

Compounding its error, the majority treats the Note as creating a rebuttable presumption. On its reading, if a gun is found near drugs, courts should presume that the defendant possessed the gun in connection with the drug crime. The defendant can then rebut that presumption by disproving a relationship between the gun and the drugs. Maj. Op. 17–19.

But the text does not say that. And no other circuit has adopted this novel approach. The majority cites three circuits that call this rule a presumption, but they do not call it rebuttable. Rather, because the Note applies "automatically" when guns are near drugs, these courts treat the presumption as conclusive. *Eaden*, 914 F.3d at 1008–09 (citing *Jeffries*, 587 F.3d at 692). Plus, at oral argument, the Government rejected the majority's reading: "[I]t is not a rebuttable presumption under the guideline." Oral Arg. Tr. 27. So did Perez, who read the note as a "very clear strict liability" rule. *Id.* at 38. The parties got that right.

## III. THE MAJORITY SHIFTS THE BURDEN OF PROOF ONTO THE DEFENDANT

The majority's rewrite makes Perez bear a burden of disproof. The burden of proving every element of a crime rests on the Government. *Patterson v. New York*, 432 U.S. 197, 215 (1977). The same is true for Sentencing Guidelines. *United States v. Douglas*, 885 F.3d 124, 136 (3d Cir. 2018). This Guideline's plain text requires the Government to prove that

9

the defendant used or possessed a gun or ammunition "in connection with" another felony. §2K2.1(b)(6)(B).

As the majority agrees, a gun can be close to drugs without being connected to drug trafficking. *See* Maj. Op. 16. Yet in these cases, it lets the Government prove mere proximity. Then, the burden shifts to the defendant to *disprove* a connection. That approach mistakenly relieves the Government of its burden of proof.

This legal presumption differs from a mere factual inference. Factually, a district court may choose to infer that a gun is connected to nearby drugs. Often, that will be obvious, as when a drug dealer carries it in his holster or keeps an arsenal right next to his stash. *See Loney*, 219 F.3d at 288 (affirming similar factual inferences before the Note was added); *United States v. Spurgeon*, 117 F.3d 641, 643–44 (2d Cir. 1997) (per curiam) (same). But a factual inference is permissive. The court can find that a gun under the mattress is connected to drugs across the room—but it need not. Plus, a factual inference leaves the burden of proof where it belongs: on the Government.

Rather than create a legal presumption, we should remand to let the District Court draw whatever inference it finds warranted on the facts. But if the evidence is equally balanced, the tie should go to the defendant. Because depriving someone of his liberty is a severe sanction, our system of laws demands that the Government bear the burden of proof. By rewriting the text of Note 14(B), the majority strips away this bulwark.

10

* * * * *

Perez had guns near drugs but insists that they were unconnected. He should be able to make this argument on remand. Note 14(B) should neither determine the outcome nor create a legal presumption that he must rebut.

The Note (and the majority's approach) may be sensible policy, reflecting the inherent danger of having guns near drugs. But that policy decision belongs in the Guidelines, after notice and comment, not in the Note. Because the Note deserves no deference, I respectfully concur only in the judgment.