**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 22-3428

_____

UNITED STATES OF AMERICA

v.

JABBAR PIERCE,
                    Appellant

_____

On Appeal from the United States District Court for the
District of New Jersey

(D.C. Crim. No. 1-22-cr-0043-001)

District Judge: Honorable Joseph H. Rodriguez

_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
September 21, 2023

_____

Before: RESTREPO, McKEE, RENDELL, *Circuit Judges*

(Filed: December 5, 2023)

_____

O P I N I O N*

_____

**RENDELL**, *Circuit Judge*.

---

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Jabbar Pierce pled guilty to one count of felony gun possession under 18 U.S.C. § 922(g)(1). The District Court applied a four-level guideline enhancement pursuant to USSG §2K2.1(b)(6)(B) for possession of a firearm in connection with another felony offense and imposed a 92-month prison sentence. Pierce appeals and argues that the District Court erred by using the wrong standard to apply the enhancement. We will affirm the District Court's judgment.

I[1]

In November 2021, law enforcement obtained a search warrant for Pierce's home seeking firearms and evidence of drug offenses. Pierce received his *Miranda* warnings while detained outside and, unprompted by the officers, indicated that a gun and drugs were in the house, specifying the locations of both.

During the search, the officers seized a .40 caliber rifle with a detached 24-round magazine containing approximately 14 rounds of ammunition, which had been stored inside a bag behind a living room couch. The officers also recovered two sandwich bags containing a white, rock-like substance from inside a kitchen cabinet, along with drug paraphernalia consistent with packaging used for distribution. The suspect substance and drug paraphernalia were located approximately 10 to 20 feet from the living room where the rifle was stowed.

Pierce pled guilty to one count of illegal possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1). In calculating Pierce's offense level in the

---

[1] We write primarily for the parties, and so we recite only the facts necessary to decide the case.

Presentence Investigation Report ("PSR"), the United States Probation Office applied a four-level enhancement under USSG §2K2.1(b)(6)(B) for possessing a firearm in connection with another felony offense—namely, possession with intent to distribute a controlled substance. Pierce's counsel objected to the four-level enhancement in the PSR, arguing that the firearm had no connection to the drugs because it was stored in a physically separate space in the house and no drugs were either recovered on Pierce's person or in the bag behind the couch with the rifle.

At sentencing, after permitting argument on the issue, the District Court rejected Pierce's position and applied the four-level enhancement. The District Court reasoned that the defendant had failed to meet his burden of demonstrating the improbability of an inferred connection between the firearm and the drugs based on their close proximity. The District Court found an offense level of 26 and a criminal history category of IV, which resulted in a Guidelines range of 92 to 115 months' imprisonment. The District Court sentenced Pierce to a prison term of 92 months. Pierce now appeals that sentence.

## II[2]

"[W]e exercise plenary review over a district court's interpretation of the Guidelines." *United States v. Denmark*, 13 F.4th 315, 318 (3d Cir. 2021) (citing *United States v. Napolitan*, 782 F.3d 297, 307 (3d Cir. 2014)). But "[w]e review a district court's factual determinations for clear error," which is found "if, when reviewing the entire record, we are 'left with the definite and firm conviction that a mistake has been

[2] The District Court had subject matter jurisdiction under 18 U.S.C. § 3231. We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

3

committed.'" *Napolitan*, 762 F.3d at 307 (quoting *United States v. Kulick*, 629 F.3d 165, 168 (3d Cir. 2010)).

The relevant facts are not disputed. When a court's decision to apply the enhancement is "essentially factual," *United States v. Drozdowski*, 313 F.3d 819, 822 (3d Cir. 2002), we conduct only clear error review of the court's "determination concerning the connection, or lack of it, between guns and drugs." *Denmark*, 13 F.4th at 318.[3]

### III

Pierce urges us to vacate his sentence and remand his case because the District Court applied the "clearly improbable" standard under USSG §2D1.1(b)(1) instead of the proper standard under §2K2.1(b)(6)(B), namely, whether the firearm facilitated, or had the potential to facilitate, his drug offenses. Pierce urges that we should remand for the District Court to perform the analysis under the correct standard.

We agree that the District Court used the incorrect legal standard.[4] However, because its factual findings, which were supported by the record and were not clearly

---

[3] Pierce contends that plenary review applies to the entirety of the District Court's ruling because he is complaining about a "purely legal error with no factual component at all." Reply Br. at 3 (quoting *United States v. Perez*, 5 F.4th 390, 393 n.2 (3d Cir. 2021)). In *Perez*, however, we conducted a fresh review of the lower court's decision because its interpretation of the Guidelines precluded it from conducting a fact-based analysis concerning the connection between drugs and guns in the case once close spatial proximity had been found. *See Perez*, 5 F.4th at 393. Here, the District Court's decision was not based on such a "bright-line rule," *id.* at 392, but was instead rooted in a fact-based determination regarding whether the connection between the drugs and the gun was sufficient to apply the sentencing enhancement.

[4] Instead of applying the standard outlined in *Perez*, the District Court applied a "clearly improbable" standard derived from a different, two-level enhancement under USSG §2D1.1(b)(1). App. 48–51; *see Perez*, 5 F.4th at 399–401. The §2D1.1(b)(1) enhancement applies in cases of firearm possession accompanying a conviction for

erroneous, satisfied the correct standard, we will not disturb the District Court's

application of the sentence enhancement, and there is no need for remand. *See, e.g.,*

*Denmark*, 13 F.4th at 320 (holding remand was unnecessary, notwithstanding the district

court's failure to "address directly whether [the defendant] met the clearly improbable

standard" under §2D1.1(b)(1), because there was "nothing in the record to hint at

dispelling the firearms-drug activity connection").

The four-level sentencing enhancement at issue here applies if the defendant "used

or possessed any firearm . . . in connection with another felony offense." USSG

§2K2.1(b)(6)(B). Generally, the Sentencing Commission's Commentary directs that the

enhancement applies "if the firearm . . . *facilitated, or had the potential of facilitating*,

another felony offense." *Id.* §2K2.1 cmt. n.14(A) (emphasis added). Application Note

14(B) provides further direction for applying the enhancement when the other offense is a

drug-trafficking offense, noting that the enhancement applies if the firearm "is found in

close proximity to drugs, drug-manufacturing materials, or drug paraphernalia . . .

because the presence of the firearm has the potential of facilitating another felony

offense." *Id*. §2K2.1 cmt. n.14(B). In *United States v. Perez*, 5 F.4th 390, 400 (3d Cir.

2021), we held "that Note 14(B) creates a rebuttable presumption that the enhancement

---

unlawful manufacturing, importing, exporting, or trafficking of drugs, and Application Note 11(A) to §2D1.1 directs that the two-level "enhancement should be applied if the weapon was present, unless it is *clearly improbable* that the weapon was connected with the offense." USSG §2D1.1(b)(1) cmt. n.11(A) (emphasis added). Pierce's PSR did *not* include the two-level §2D1.1(b)(1) enhancement in calculating his advisory Guidelines, but rather included the application of the four-level enhancement under §2K2.1(b)(6)(B). Despite this, the District Court repeatedly alluded to the "clearly improbable" §2D1.1 standard. App. 48–51.

should apply for a drug-trafficking offense when a firearm is found in close proximity to drugs or related items." Defendants can rebut this presumption by demonstrating that relevant factors weigh in their favor, including: "(1) the type of gun involved, with handguns more likely to be connected with drug trafficking than hunting rifles; (2) whether the gun was loaded; (3) whether the gun was stored (or . . . possessed) near the drugs or drug-related items; and (4) whether the gun was accessible." *Perez*, 5 F.4th at 400–01.

Here, the District Court found the firearm to be "in close proximity to the drugs that were in the kitchen," App. 50, an estimated 10 to 20 feet away, so the presumption would apply. It also made findings regarding the factors that could arguably rebut the presumption.

First, the District Court noted that the weapon recovered at Pierce's residence was a rifle, and the PSR identified it as a KelTec model SUB-2000 .40 caliber rifle, which the Government described as semi-automatic. We have previously remarked that the presence of a "semi-automatic assault rifle" suggests a connection with "drug activities rather than sporting or any other innocent use." *Denmark*, 13 F.4th at 320.

Second, the District Court found that "a magazine . . . was loaded by the rifle behind the couch." App. 49; *see Denmark*, 13 F.4th at 320 (weighing against defendant the fact that "some of the loaded magazines were recovered in the same bedroom as the guns"). So, this factor, too, weighs against Pierce.

Third, while the drugs and gun were not recovered from the same room, *cf. Drozdowski*, 313 F.3d at 823, they were found on the same floor of Pierce's house, in immediately adjacent rooms. Pierce offered no persuasive argument as to how "their precise

6

location in the house demonstrates a lack of connection (for example, he [did] not argue that another resident had exclusive control over the parts of the house where the [rifle was] stored)." *Denmark*, 13 F.4th at 320. This third factor, then, is not helpful to Pierce's appeal.

As to the fourth factor, the District Court found that the rifle behind the living room couch was "certainly . . . accessible." App. 51. The District Court analogized to our holding in *Drozdowski*, where we found weapons to be accessible, notwithstanding their location under furniture and in a cluttered room, because the defendant, knowing the weapons' location, could access them readily. *Drozdowski*, 313 F.3d at 822, 824; *see also Denmark*, 13 F.4th at 321 (holding that guns located in locked safe in closet were accessible).

Considering these findings by the District Court regarding the relationship between the firearm and drugs recovered in Pierce's residence, we conclude that the correct §2K2.1(b)(6)(B) standard, as elaborated upon in *Perez*, was satisfied.[5]

IV

In light of the above, we will affirm the District Court's judgment.

---

[5] We note that our caselaw requires that the defendant have the opportunity to rebut the §2K2.1(b)(6)(B) presumption at sentencing by addressing the four factors or by showing that the presence of the firearm was "mere accident or coincidence." *Perez*, 5 F.4th at 401–02. Pierce had that opportunity, but Pierce's counsel only attempted to rebut the presumption by arguing that the firearm and the drugs were not sufficiently proximate because they were found in different rooms, and Pierce was not "in close proximity to the gun at the time of his arrest or the drugs." App. 47–48.

7